[Civ. No. 6999.   First Appellate District, Division One.—November 24, 1930.]

EDITH A. W. MERCER et al., Appellants, v. CHAS. E. DUNSCOMB et al., Executors, etc., Respondents.

Thornton Wilson and Pillsbury, Madison & Sutro for Appellants.

Redmond C. Staats, James M. Koford and J. J. Earle for Respondents.

THE COURT.—Plaintiffs sued the defendants above named for $13,000 and obtained a judgment against two of them, Munro and Huey, for the sum of $12,680.26. The third defendant, Cornwall, was not served with summons, and consequently as to him no relief was granted; and the remaining two, Dunscomb and Marston, were absolved by the trial court from all liability on the indebtedness sued upon. From the latter part of the judgment plaintiffs have appealed.

As will hereinafter more particularly appear, the amount plaintiffs sued for had been deposited by them with the Security Bond and Finance Company, a corporation, of which the defendant Dunscomb and the deceased Wm. H. Marston were two of the five directors, for the purpose of purchasing for plaintiffs certain bonds, and substantially all of it was misappropriated to the use and benefit of the corporation by the defendants Cornwall and Huey, with the consent of Munro, the three being at the time the remaining members of the board of directors, and also, respectively, the vice-president and manager, the secretary, and the president of the corporation.

The amended complaint contained two causes of action, separately stated. The first was based upon the liability created against directors of corporations by section 3 of article XII of the state Constitution; but the trial court held that such liability applies only to the embezzlement or misappropriation of funds belonging to the corporation, and that therefore, since the money here sought to be recovered admittedly belonged to plaintiffs and not to the corporation, the liability created by said constitutional provision could not be invoked by plaintiffs. The second cause of action, as against Cornwall, Huey and Munro, was based upon the fact of the actual misappropriation by them of the entrusted funds; and as against Dunscomb and Mar-

ston, upon allegations to the effect that such misappropriation was the result of the negligent manner in which the latter performed their duties as directors. The trial court found, however, that the evidence on this issue was legally insufficient to establish negligence on their part, and consequently, as stated, judgment was entered in their favor, but against the defendants Munro and Huey for $12,680.26, the amount of the defalcation.

The first question presented for determination is whether, as the trial court held, the directors' liability created by section 3 of article XII of the Constitution applies only to the cases of embezzlement or misappropriation of funds belonging to the corporation; or whether, as· plaintiffs contend, it extends to cases, such as we have here—the misappropriation of funds entrusted to a corporation in the regular course of its business. The portion of said section 3 of article XII, which is pertinent, reads as follows: " . . . The directors or trustees of corporations and joint-stock associations shall be jointly and severally liable to the creditors and stockholders for all moneys embezzled or misappropriated by the officers of such corporation or joint-stock association, during the term of office of such director or trustee."

So far as our attention has been called, no case has been decided by the reviewing courts involving facts analogous to those presented here; but on several occasions said constitutional provision has been construed in actions involving the embezzlement or misappropriation of corporate funds and in all of them it is clearly indicated, we think, that said constitutional liability extends only to the embezzlement or misappropriation of funds belonging to the corporation itself, in whose services the defaulting officer is employed.

As said in the case of *Fox* v. *Hale & Norcross Silver Min. Co.*, 108 Cal. 369 [41 Pac. 308, 326], "It does seem that it was the intention of the framers of the constitution to make each director of a corporation severally liable, whether individually culpable or not, *for'certain kinds of losses to the corporation* occurring during his term of office; that is to say, he is made liable for embezzlement or misappropriation of *corporate funds* by officers of the corporation." Later, in the case of *Winchester* v. *Howard*, 136 Cal. 432 [89 Am.

St. Rep. 153, 64 Pac. 692, 69 Pac. 77, 81], it was said: "The design plainly was to prevent speculating in *corporate funds* by directors and to make them vigilant for their beneficiaries. . . . I think it clear that when an officer of a corporation knowingly appropriates funds entrusted to him, for unlawful and unauthorized purposes, *and loss ensues to the corporation,* the directors are liable under this clause of the constitution." And again in *Dean* v. *Shingle,* 198 Cal. 652 [46 A. L. R. 1156, 246 Pac. 1049, 1054], the court says: "The design plainly was to prevent speculation and misappropriation of *corporate funds.* . . . But before the directors can be held liable for moneys so misappropriated as to make the officer misappropriating liable, and authorizing the creditors and stockholders to sue, it must be established, first, that there has been a misappropriation; and second, that *a loss to the corporation has resulted.*" (All italics ours.)

Moreover, in the case of *Dean* v. *Shingle, supra,* it is said that the action authorized to be maintained against directors under the constitutional provision above mentioned "is one in effect to recover assets of the corporation which constitute a fund to which all the creditors may look for satisfaction of their claims (*Winchester* v. *Mabury,* 122 Cal. 522, 524 [55 Pac. 393])"; and continuing, the court said that the recovery, if any be had, constitutes a fund for the benefit of all the creditors; and that if after satisfying their claims, any of the fund remains, it will belong to the stockholders. The foregoing construction would seem to be wholly at variance with the theory advanced by plaintiffs herein to the effect that said constitutional provision confers upon the creditors of a corporation the right to maintain separate actions against the directors for the recovery of money entrusted by said creditors to the corporation and by the officers thereof embezzled or misappropriated, because, manifestly, any money recovered in such actions would belong to the creditor who had entrusted it to the corporation, and would not, as contemplated by the decision in *Dean* v. *Shingle, supra,* "constitute a fund for the benefit of all creditors".

In support of their theory, plaintiffs emphasize certain language employed in the case of *Fox* v. *Hale & Norcross Silver Min. Co., supra,* in interpreting the meaning of the

word "misappropriation" as used in said constitutional provision, wherein it was said: " . . . In my opinion, the word 'misappropriation' is to be construed by the maxim *noscitur a sociis;* it means something like embezzlement, or in other words, it means the misapplication of funds entrusted to an officer for a particular purpose, by devoting them to some unauthorized purpose, and does not apply to the payment of an extravagant price for services or materials properly appertaining to the business of the corporation—which is this case." But, as will be observed from the language quoted as well as from the other facts appearing in the opinion, only corporate funds were there involved, and it is apparent therefrom that the expression "funds entrusted to an officer" as there used meant only corporate funds entrusted to such officer and not funds entrusted to the corporation by others. For the reasons stated we are in accord with the trial court's conclusion that the liability created by said constitutional provision applies only to the embezzlement or misappropriation of corporate funds.

With respect to the second cause of action, plaintiffs make no claim that the evidence adduced at the trial was legally sufficient to justify a finding that Dunscomb and Marston were negligent, but it is contended that prejudicial error was committed in excluding certain evidence offered by them which they claim would have been legally sufficient to establish a *prima facie* case against the respondent defendants for the loss of said entrusted funds. The facts leading up to the rulings complained of were as follows: Said Security Bond and Finance Company was engaged in the business of buying and selling securities. It had offices in Berkeley and operated in connection with its business a safe deposit department for the deposit of securities belonging to its clients. The plaintiff Edith Mercer was a resident of Palo Alto and held power of attorney from her brother and coplaintiff Woodsum. For a number of years she had counseled with and followed the advice of Munro in making financial investments for herself and brother. The business was transacted through said corporation and the securities it purchased for plaintiffs were left on deposit with the corporation for safekeeping. In pursuance of such business relationship, and just prior to December 31, 1925, said corporation held in

its possession and belonging to plaintiffs a number of bonds of the total par value of $16,000, which Mrs. Mercer desired to sell and with the proceeds to purchase tax-exempt securities. Upon being consulted Munro advised the purchase of Palo Verde Irrigation District bonds, and she authorized the corporation to proceed accordingly. On January 2, 1926, said corporation informed plaintiffs that the transaction had been consummated, and issued and delivered to them a receipt dated January 2, 1926, containing a list of the bonds it claimed to have purchased and stating that it was retaining the same in its possession for safekeeping as gratuitous bailee. On May 20, 1926, the corporation closed its doors and later went into the hands of a receiver and was adjudged bankrupt. Upon learning of the collapse of the corporation plaintiffs presented their receipt to the receiver and demanded delivery of the bonds enumerated therein. It was then discovered that the statements set forth in the receipt were false; that no bonds whatever had been purchased for plaintiffs, but on the contrary that the money they entrusted to the corporation for such purpose had been misappropriated by Cornwall, Huey and Munro, by mingling the same with the general funds of the corporation and expending all of it in carrying on its business; and that in lieu of purchasing the bonds called for by said receipt and depositing the same in plaintiffs' safe deposit file, the officers named placed therein a so-called "Interim Certificate", which proved to be worthless. It read as follows: "Par Value $13,000.00 Number 1304 Security Bond and Finance Company Interim Certificate Berkeley, California, December 31, 1925. This is to acknowledge that there is due Mrs. E. A. W. Mercer, Trustee for, or order Howard C. Woodsum thirteen thousand and no/100 ($13,000.00) dollars, par value of Palo Verde Irrigation District 6's due various dates. When received by us we will deliver the same upon surrender of this certificate, properly endorsed. Should the above bonds not be issued, this certificate, properly endorsed, will be redeemed by us for thirteen thousand three hundred ninety and no/100 dollars, the sum originally paid for the same, together with interest thereon at the rate of six (6) per centum per annum from date of this certificate to the time of its redemption, provided, however, that interest shall cease to accrue

thirty days after notice is transmitted to the holder hereof that the delivery of the above bonds will not be made. Security Bond and Finance Company, By H. Soderholm, Cashier. (Corporate Seal.)"

After having established the foregoing facts, plaintiffs offered to prove further that the general practice of the corporation was to mingle the money entrusted to it by its various clients for the purchase of securities with its general funds and to issue interim certificates therefor, without maintaining a reserve fund for the redemption of such certificates in case the securities were not purchased; that in twenty-four different instances it had done so, and "that the amount of such interim certificates outstanding between December 31, 1925, and May 20, 1926, varied from a maximum of $159,684.35 on January 16, 1926, to a minimum of $116,279.90 on dates between April 12 and 17, 1926". But the evidence was excluded on objection of the defendants.

We are of the opinion that under the law as laid down in the case of *Vujacich* v. *Southern Commercial Co.*, 21 Cal. App. 439 [132 Pac. 80, 81], such evidence was admissible. In that case the defendant corporation was engaged ostensibly in the grocery and liquor business, its customers consisting mostly of laborers, who from time to time deposited their earnings with the corporation for safekeeping. But instead of keeping the entrusted funds separately, the officers of the corporation mingled the same with the corporation's funds, deposited the whole thereof to its credit in the bank, and afterward misappropriated the same to its own use and benefit in purchasing and operating a distillery in another state. Thereafter the depositors brought suit against the corporation and its directors for the recovery of their money, and obtained judgment accordingly. No evidence was introduced to show, however, that two of the directors sought to be held liable, one of whom was Mrs. R. E. Hansard, the wife of J. L. Hansard, the manager of the corporation, had any actual knowledge of the illegal use of the entrusted money; and mainly upon that ground those two directors appealed, Mrs. Hansard contending that in the absence of evidence showing actual knowledge of the illegal use of the entrusted funds she was not personally liable for the misappropriation of any part thereof. This

contention was held to be without merit, the court saying: "It is true that no directors' meetings were shown ever to have been held and no evidence was introduced showing that actual knowledge was brought home to director R. E. Hansard of the condition of the affairs of the company, or its conduct with respect to the money of plaintiff and his assignors. On the other hand, this appellant did not testify or offer any proof showing that she had no such knowledge, or that she could not have obtained it by the exercise of ordinary diligence as a director of the company. Where the business of receiving deposits by a corporation is so general as it was with the corporation defendant herein, it must be presumed that the directors had full knowledge of the manner in which such moneys were kept or used, and unless a showing is made of some excuse, such as a protest offered by the director not consenting to the misappropriation and of steps taken by such director to prevent loss from accruing to the depositors, such director becomes personally liable to the persons damaged."

It seems clear, therefore, that under the foregoing doctrine plaintiffs in the present case were entitled to show, if they could, that it was the general business practice of said corporation to receive deposits from its numerous clients and to issue these interim certificates therefor; because, as held in that case, proof of such fact would have been legally sufficient to charge all of the directors as a matter of law with knowledge of the manner in which said deposits were being kept and disposed of, and consequently legally sufficient, in the absence of explanatory evidence showing individual effort on their part to safeguard and prevent the loss of such deposits, to establish against them *prima facie* liability for the misappropriation of such deposits to the use and benefit of the corporation by the officers thereof. No such explanatory evidence was introduced on behalf of Dunscomb and Marston, the former not having testified in the case; and, as stated, Marston having died before the action was begun. The rulings excluding plaintiffs' evidence were therefore prejudicial.

In justification of the exclusion of such evidence the respondent defendants contend that by the weight of outside authority, while a director may be held liable to a creditor for loss sustained as a result of the director's mis-

feasance or malfeasance, he cannot be held liable in the absence of express enactment for mere nonfeasance, such as inaction, inattention, or indifference to the duties of his office; in other words, that proof of affirmative acts violative of some right of the party suffering the loss or injury is essential to such liability. But the facts of the cases declaring such rule differ materially from those presented here and in the Vujacich case, and therefore in our opinion the principle adhered to in those cases is not applicable here. Many of those cases involved liability of directors for loss of corporate funds, as distinguished from entrusted funds; and as we have seen such rule of liability has been greatly enlarged in this state in cases where the loss occurs through misappropriation or embezzlement of corporate funds, by the adoption of the rule of liability embodied in section 3 of article XII of said Constitution, the decisions of this state having repeatedly held that in such cases the directors are severally and personally liable "whether individually culpable or not". (*Fox* v. *Hale & Norcross Silver Min. Co., supra; Dean* v. *Shingle, supra.*) Some of the other cases cited deal with the liability of directors of insolvent banks which received deposits after the bank had apparently become insolvent; consequently those cases do not involve the relationship of bailor and bailee. Others involve only the question of the individual liability of directors for personal injuries resulting from the negligent manner in which the corporation operated its business. True, one case, *Cohen* v. *Maus*, 297 Pa. St. 454 [147 Atl. 103], dealt with the question of the personal liability of directors for the conversion by the officers of the corporation of plaintiffs' goods which he had left temporarily in the possession of the corporation, after having purchased and paid for the same. But, as will be noted, only a single bailment was there involved, there being no claim made as here and in the Vujacich case *supra*, that the corporation was engaged in the general practice of retaining possession of goods, which obviously is the essential element in charging directors with constructive knowledge of the manner in which the subject matter of the bailments are being kept and disposed of. On the other hand, we have the case of *Frontier Milling etc. Co.* v. *Roy White Co-op. Mercantile Co.*, 25 Idaho, 478 [138 Pac. 825], which would seem to be not only similar in principle to

the case at bar and to the Vujacich case, but which fully sustains the legal doctrine declared in the Vujacich case. There the corporation issued warehouse receipts to its numerous customers for grain stored with the corporation, and which was afterward appropriated by the officers of the corporation to its use; and it was held in effect that under such circumstances the directors were presumed to know the relationship existing between the corporation and its customers, and that if by the exercise of reasonable diligence and care on their part they could and would have known that the grain was being unlawfully diverted and embezzled by their own officers, they were personally liable for the loss sustained (citing cases). In the case at bar it was alleged in substance in the second cause of action that between December 30, 1925, and April 10, 1926, Cornwall and Huey "then and there well knowing that the sum of $13,000 . . . had been entrusted to said corporation for the purpose aforesaid, used said sum of $13,000 to pay debts of said corporation owing to persons other than plaintiffs, and thereby embezzled and misappropriated said sum of $13,000"; also that the defendants Huey, Cornwall and Munro knew that the bonds mentioned in said receipt had not been purchased and that the said sum of $13,000 had been misappropriated and embezzled by the defendants Cornwall and Huey; and that by the exercise of reasonable care Dunscomb and Marston "could and would each have discovered prior to April 10, 1926, all the said matters and things of which the defendants M. A. Huey, Neill C. Cornwall, Niel E. Munro had knowledge. . . . " The foregoing allegations were legally sufficient, in our opinion, to bring the case within the rule of the Vujacich and Idaho cases, and therefore warranted the introduction of the excluded evidence.

■ The respondent Dunscomb pleaded in bar of the action a release from the trustee in bankruptcy to the effect that in consideration of the payment by Dunscomb to the trustee of the sum of $10,000 the trustee released Dunscomb "of any and all liability . . . to the estate of said bankrupt resulting from the directorship . . . and of all claim or claims that the trustee in bankruptcy as such could make or assert against the said Chas. E. Dunscomb". The trial court found that said release had been given, but stated no conclusion

as to its legal effect. However, it is evident that it can have no effect upon the merits of the present action for the reason that it relates entirely to the liability of a director of a defunct corporation arising under the federal bankruptcy law (11 U. S. C. A.), which is entirely foreign to the liability herein sued upon.

The judgment is reversed.

A petition for a rehearing of this cause was denied by the District Court of Appeal on December 24, 1930, and a petition by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 22, 1931.