[Civ. No. 18894.   Second Dist., Div. Two.   Oct. 17, 1952.]

MARY ANN FULTON, a Minor, etc. et al., Plaintiffs and Appellants, v. BERNARD HUGUET, Defendant and Appellant.

Pollock & Pollock, Edward I. Pollock and David Pollock for Plaintiffs and Appellants.

Bauder, Gilbert, Thompson & Kelly for Defendant and Appellant.

McCOMB, J.—From an order granting a new trial after the jury had returned a verdict in favor of defendant, defendant appeals. There is also a cross-appeal by plaintiff from the judgment entered on the verdict of the jury.

*Facts:* This action was instituted for the recovery of damages resulting from injuries sustained in an accident.

Nadeau Street is 37 feet wide and runs east and west, while Morton Avenue is 40 feet wide and runs north and south and into Nadeau from the south but does not continue north of Nadeau. Thus the streets form a T intersection at the scene of the accident.

Plaintiff minor shortly before the accident had dropped a letter in a mailbox at the northwest corner of Nadeau and Bell Avenue, which is one block west of the intersection of Nadeau and Morton. Plaintiff then proceeded in an easterly direction on the northerly side of Nadeau until she reached a point about five feet east of the easterly curb line of Morton, at which point she intended to cross Nadeau from the northeast portion of the intersection to the southeast corner in an unmarked crosswalk which measures 10 feet in width. Before she started to cross the street she looked to the east and to the west on Nadeau. When she looked to the west she saw some eastbound traffic on Nadeau about a block away. Plaintiff proceeded to cross the street ahead of a westbound

car in a straight southerly direction at a fast walk, and, according to her testimony, in an unmarked crosswalk. She stopped and again looked to the west on Nadeau for eastbound traffic. When she was at the center of Nadeau she then saw defendant's automobile about 100 feet from her traveling about 35 miles per hour in an easterly direction. She observed that when defendant's automobile got about one-half a car length west of Morton, it started to veer to the south and gave the appearance that it was going to turn south on Morton. Plaintiff then looked south in front of her and took two or three fast steps ahead. Looking west again on Nadeau she saw defendant's automobile which was about a foot or two away from her. She tried to leap out of the way, but it struck her, hurling her to the pavement causing her serious personal injuries.

Defendant testified: he saw plaintiff when she was approaching but not when she had reached the center of Nadeau; she was moving at a hurried pace; when he approached the west curb line of Morton he slowed down to between 20 and 25 miles per hour, applied his brakes and swerved to the south in an endeavor to avoid hitting her.

The jury returned a verdict in favor of defendant. The trial court granted plaintiffs' motion for a new trial on the ground that it had erred in giving an instruction on unavoidable accident.

## A. Defendant's Appeal

First: *Did the trial court err in granting plaintiffs' motion for a new trial?*

*Yes.* ▇▇▇ The law is settled where as in the instant case defendant denies negligence it is not error to give the jury an instruction on the doctrine of unavoidable accident. (*Covely v. C.A.B. Construction Co.*, 110 Cal.App. 30, 33 [6] [242 P. 2d 87]. *Cf. Parker v. Womack*, 37 Cal.2d 116, 122 [9] [230 P.2d 823].)

▇▇▇ Second: *May the trial court's order granting the motion for a new trial be sustained on the ground that (a) the evidence was insufficient to support the verdict of the jury, or (b) defendant was guilty of negligence as a matter of law?*

*No.* The minute order read as follows: "The motion for a new trial in this matter is granted upon the ground that the Court at the defendant's request erroneously gave instruction No. 24, Book of Approved Jury Instructions, on unavoidable

accident when there was no evidence produced to justify such instruction.''

Section 657 of the Code of Civil Procedure reads in part: ''When a new trial is granted, on all or part of the issues, upon the ground of the insufficiency of the evidence to sustain the verdict or decision, the order shall so specify this in writing and shall be filed with the clerk within ten days after the motion is granted; otherwise, on appeal from such order it will be conclusively presumed that the order was not based upon that ground.''

In the present case, since the minute order did not state that it was granted on the ground of the insufficiency of the evidence, and there was evidence that plaintiff was not in a marked or unmarked crosswalk at the time of the accident, there is no merit in plaintiffs' contention that defendant was negligent as a matter of law.

■ Third: *Was defendant's counsel guilty of prejudicial misconduct in asking that a witness be examined out of order?*

*No.* While plaintiff was still presenting his case the trial judge stated he would not continue the court session beyond 4:15 p.m. that day. It was then seven minutes to 4 p.m. In the presence of the court and jury counsel for defendant stated the witness Rogers had a business he had to close down and it would be quite an imposition for him to come back the next morning, and requested he be placed on the stand out of order. Counsel for plaintiffs objected to this procedure and stated the cross-examination would take not less than 15 or 20 minutes and he did not want to be foreclosed by shortness of time. The trial judge granted counsel for defendant's request and allowed defendant's witness to testify out of order. Counsel for plaintiffs cross-examined the witness and at the time court adjourned, counsel for defendant said: ''May I inquire if counsel will require Mr. Rogers to be back, if he has a sufficiently lengthy cross-examination to require him to give up his real work again.''

Plaintiffs' counsel then stated to the court that he was placed in a very embarrassing position in that it was made to appear he was keeping the witness from going to work. The court thereupon ordered all witnesses to return the following day.

Clearly plaintiff has failed to show wherein she suffered any prejudice by the trial court's permitting the witness to be examined out of order.

■ Fourth: *Did the trial court commit prejudicial error in receiving the verdict of the jury?*

*No.* After deliberating, the jury returned to the courtroom and the following occurred:

"The Court: Ladies and gentlemen, I take it you have reached a verdict in this matter. Will your foreman please hand the verdict to the bailiff?

"Mr. Clerk, will you read the verdict, please?

(Verdict read.)

"Mr. Pollock: May the jury be polled, your Honor?

"The Court: Very well. You may poll the jury.

(The following is inserted upon the order of the court by reason of the fact that the reporter's notes are silent):

"The Clerk: When I call your name I will ask you, 'Is this your verdict?' and you will answer 'Yes' or 'No.'

"Is this your verdict?

"Juror Vivian C. Nelson: Yes.

"Juror Kathryn A. Elledge: No.

"Juror Sam Jurow: No.

"Juror Jean Jensen: Yes.

"Juror Mary Kellerman: Yes.

"Juror Goldie Schieber: No.

"Juror Cora B. Jones: Yes.

"Juror Zella Meeker: Yes.

"Juror Grace Berg: Yes.

"Juror George C. Gibbs, Jr.: Yes.

"Juror George Meyer: Yes.

"Juror Kathryn S. Marshall: No.

(Upon the completion of the polling of the twelfth juror, the clerk again read the verdict, whereupon the following proceedings occurred):

"Juror Mrs. Schieber: I didn't vote for the defendant. I voted for them both.

"Mr. Gilbert: I think, your Honor, Mrs. Schieber has stated her misunderstanding. She stated she voted for—that they were both negligent, which would result in a verdict for the defendant. . . .

"The Court: Mrs. Schieber, I possibly didn't understand your answer there. The verdict—I am not giving you the formal verdict, but the verdict in effect was against the plaintiff, and that is that neither of them could collect from the defendant. Now the question was: did you vote for that verdict as a verdict or against the verdict?

"Juror Mrs. Schieber: I voted that the plaintiff couldn't collect for—that they were negligent, and also that the defendant was negligent.

"The Court: Then it was your verdict against the plaintiff and in favor of the defendant.

"Juror Mrs. Schieber: No. I voted they were both negligent.

"Mr. Gilbert: Your Honor, that is a matter of law.

"The Court: Yes, I can put it this way—I think I get it. I am not trying to force you in the matter into making a statement, but I think you voted—in other words, you voted against the plaintiff, —both of them?

"Juror Mrs. Schieber: Yes, sir.

"The Court: Then there is only one way you could vote which we have in mind: that was the verdict against the plaintiff.

"Juror Mrs. Schieber: Yes, sir.

"Jury Forewoman: We have a record of the way they voted.

"The Court: Yes. I believe under the statement by the juror, counsel, it has to go over into the 'yes' column. In other words, we are not polling now as to how they reached the verdict.

"Mr. Pollock: I am going to object to the verdict, your Honor, on the basis that I think that the orderly procedure would be for the jury to deliberate further in view of the fact that while at the time of the poll the vote stood at 8 to 4,—that is true, that one of the jurors indicated, namely, Mrs. Schieber, that there was a question in her mind—that is to say, that she had voted, or, rather, was of the opinion that both parties were negligent, but since there is a further issue as to whether or not the negligence of the minor was a proximate cause of the accident, I feel that that is an unsatisfactory way to leave the thing, that the verdict should —I mean, that it is not simply a question of law where the responses to the jury poll indicates 8 to 4, and how the jurors arrived at their 'Yes' or 'No' answers—I don't think that that is a matter for the Court to inquire into, and I think that it is matter for the jury. . . .

"Mr. Pollock: I am going to object to the dismissal of the jury under the circumstances, your Honor, and assign it as error under the circumstances to inquire any further than simply the question of whether or not the juror did or did not vote for a particular verdict.

"The Court: Mrs. Schieber, in the jury room——

"Juror Mrs. Schieber: In the jury room we were 9 to 3. I voted—that is how the vote was. It wasn't 8 to 4. It was 9 to 3.

"Mr. Pollock: I submit, your Honor, what went on in the jury room is certainly not a matter to discuss as far as the Court is concerned.

"The Court: Of course, I don't want to appear arbitrary in the matter if there is any possibility of causing any further hardship or expense on anyone, I would be glad to have the jury retire again to the jury room and reconsider the matter. However, at least to me it is plain that the lady's vote was for the defendant. What are your feelings, Mr. Gilbert?

"Mr. Gilbert: Your Honor, in view of what has been said, I think it is perfectly apparent Mrs. Schieber just thought she was being asked whether she voted that the defendant was not negligent, and she made it plain that she didn't mean that, that she meant they were all negligent, and it thus becomes a matter of law, their verdict having once been rendered, it is perfectly obvious, as your Honor says, that that is what she meant, that neither side could recover.

"Juror Mrs. Schieber: That is how I voted.

"Mr. Gilbert: And I therefore move your Honor to accept the verdict and instruct the clerk to enter it in due course.

"The Court: I have inquired so far, and I am going to ask one more question now: Mrs. Schieber, you stated that when you left the jury room the vote was 9 to 3. May I ask now, were you one of the nine voting on the verdict that was arrived at?

"Juror Mrs. Schieber: I was, yes. . . .

"Mr. Pollock: If the court please, before the objection is ruled on, will it be shown for the record that we object to the recordation of the verdict in view of the poll showing the jury was eight for the defendant and four 'Noes', and that we object to the jury being discharged under the circumstances.

"The Court: All right. The objection will be overruled and the clerk will be ordered to enter the verdict."

Clearly no prejudicial error resulted from the procedure which the court followed. Section 619 of the Code of Civil Procedure reads, "When the verdict is announced, if it is informal or insufficient, in not covering the issue submitted, it may be corrected by the jury under the advice of the court, or the jury may be again sent out."

It is evident that Mrs. Schieber voted in the jury room in favor of defendant and the procedure followed by the trial judge was not prejudicial to plaintiff. Hence there was no error in the trial court's not sending the jury out for further deliberation.

In view of the fact there was no sound basis for the order granting plaintiffs' motion for a new trial it must be reversed.

### B. Plaintiffs' Appeal

█ First: *Was there substantial evidence to sustain the judgment in favor of defendant?*

*Yes.* By the evidence, which supported the facts stated above, the trial jury had been presented the issue of fact as to whether or not defendant was negligent. From such evidence the trial jury may have found that the accident was an unavoidable one or that defendant was not negligent. In either event the verdict in favor of defendant would be supported by the evidence and this court under the familiar rule is bound by the findings of the trier of fact where there is any substantial evidence to sustain its finding.

The order granting the motion for a new trial is reversed; the judgment in favor of defendant is affirmed.

Moore, P. J., and Fox, J., concurred.

Plaintiffs and appellants' petition for a hearing by the Supreme Court was denied December 15, 1952. Shenk, J., and Carter, J., were of the opinion that the petition should be granted.