(January 31, 1914.)

FRONTIER MILLING & ELEVATOR COMPANY, a Corporation, Appellant, v. THE ROY WHITE CO-OPERATIVE MERCANTILE COMPANY, a Corporation, et al., Respondents.

[138 Pac. 825.]

Statutory Construction—Warehouse Receipts—Transfer of—Secs. 1491, 1493 and 3488, Rev. Codes, Construed—Sufficiency of Complaint—Public Warehouse Corporation—Liability for Goods—Personal Liability of Directors—General Manager—Effect of 1911 Amendment of Sec. 1493.

1. Clerical errors or misprints in a statute which would render the statute unmeaning or absurd, or which would defeat or impair its intended operation, will not be permitted to go uncorrected when the true reading is obvious and the real meaning of the legislature is apparent on the face of the enactment taken as a whole.

2.  *Held,* that in sec. 1493, Rev. Codes, as amended by Sess. Laws of 1911, p. 111, sec. 6, the clause, "Any person, firm or corporation, superintendent or trustees *of* any board of directors of any firm or corporation, who shall violate any of the provisions of this chapter shall be guilty of a felony," should be corrected by reading the word "or" instead of the word "of," where the latter word first occurs in said clause, in order to carry out the obvious intent of the legislature as apparent from the act as a whole.

3.  Secs. 1491 and 3488, Rev. Codes, as applied to the transfer of warehouse receipts by indorsement, do not prevent a valid transfer of such receipts by any method which was effectual before the enactment of said statutes.

4.  The allegation in a complaint that certain warehouse receipts were "sold, assigned and delivered" is a sufficient allegation with reference to the question of the valid transfer of such receipts under the provisions of secs. 1491 and 3488, Rev. Codes.

5.  Where the owner of warehouse receipts caused the warehouse corporation to keep the property represented by said receipts, consisting of grain, seeds and potatoes, in a separate part of its warehouse, apart from all other grain and produce stored in such warehouse, and caused the warehouseman to mark the sacks containing such property plainly with the name of the owner, such acts on the part of the warehouseman are an acknowledgment of the validity of the transfer of the receipts from owner's assignor, as well as of the property represented thereby, and estop the warehouseman from denying the same.

6.  Under our statutes warehouse receipts are assignable by indorsement and negotiable, and indorsement thereof indicates a valid transfer of the commodity represented by such receipts. Indorsement may be made either in blank or to the order of another. No particular form of indorsement or assignment is necessary, provided there is manifest an intention to transfer the property in the goods represented by such receipts.

7.  The transfer of a warehouse receipt in good faith, and in the ordinary course of business, operates to transfer to the holder the title to the goods covered by the receipt.

8.  A complaint in an action against a board of directors of a public warehouse corporation, wherein it is alleged that the general manager of said corporation, with the full knowledge of said board and with their consent and acquiescence, wrongfully embezzled and converted to the use and benefit of such corporation, grain and other produce stored in said warehouse by the owner thereof, contrary to law and in violation of an express contract with said ware-

house corporation, states a cause of action under sec. 1493, Rev. Codes, as amended by Sess. Laws of 1911, p. 111, sec. 6.

9. The directors of a corporation are its agents and occupy a fiduciary relation to it. They are held to the exercise of good faith in all dealings with the public concerning corporation business, and are personally liable in damages to the party injured by their mismanagement, misconduct or ordinary negligence in connection with their duties as such directors.

10. What constitutes a proper performance of the duties of a director of a corporation is a question of fact, which must be determined in each case in view of all the circumstances.

11. The relation of a public warehouse corporation to the owner of goods intrusted to such corporation is that of bailee and bailor for hire. Under the statutes of this state the title to such goods remains in the bailor thereof.

12. Boards of directors are responsible for the employment of general managers and are presumed to exercise reasonable care in their selection, so that property intrusted to the care of their corporation will be protected from dishonest practices or the violation of the corporation's contracts concerning it while under the supervision of such general manager.

13. It was the intention of the legislature, when enlarging by amendment the provisions of sec. 1493, Rev. Codes, to further safeguard and protect the produce of the farmer or member stored with public warehousemen.

APPEAL from the District Court of the Seventh Judicial District for Washington County. Hon. Ed. L. Bryan, Judge.

Action against a warehouse corporation to recover damages for nondelivery of property on presentation of warehouse receipts. Judgment for defendants. *Reversed.*

Ed. R. Coulter, for Appellant.

Statutes will be construed within the view of ascertaining the intent of the law-making power and to give force and meaning to the language used. (*Idaho Mut. Co-operative Ins. Co. v. Myer,* 10 Ida. 294, 77 Pac. 628; *Greathouse v. Heed,* 1 Ida. 494; *Empire Copper Co. v. Henderson,* 15 Ida. 635, 99 Pac. 127; *In re Bossner,* 18 Ida. 519, 110 Pac. 502; Black, Interpretation of Laws, pp. 35, 73.)

Clerical errors or misprints, which, if uncorrected, would render the statute unmeaning or nonsensical, or would defeat or impair its intended operation, will be corrected by the court and the statute read as amended, provided the true reading is obvious and the real meaning of the legislature is apparent on the face of the whole enactment.   (Black, Interpretation of Laws, p. 153; *United States v. Wiltberger,* 5 Wheat. (U. S.) 76, 5 L. ed. 37.)

Directors certainly are bound under the law to exercise such diligence as a reasonably prudent and skillful man exercises in the conduct of his own affairs.   (10 Cyc. 830.)

And whatever liability the corporation may have, the individuals who, under cover of their offices, commit fraud, are accountable for their conduct in a civil action in the suit of the injured parties.   (*Salmon v. Richardson,* 30 Conn. 360, 79 Am. Dec. 255; *Peck v. Cooper,* 112 Ill. 192, 54 Am. Rep. 231; *Horn Silver Min. Co. v. Ryan,* 42 Minn. 196, 44 N. W. 56; *Stone v. Chisolm,* 113 U. S. 302, 5 Sup. Ct. 497, 28 L. ed. 991; *Nix v. Miller,* 26 Colo. 203, 57 Pac. 1084.)

Section 1493, as amended, certainly gives the right to the creditor to bring action against the directors or any other person made liable.   It invokes the law of public policy.   Other states have from time to time, in various forms, applied this same principle.   (10 Cyc. 852; *Fairbanks etc. Co. v. Macleod,* 8 Colo. App. 190, 45 Pac. 282; 40 Cyc. 450; *Rice v. Madelia Farmers' Warehouse Co.,* 78 Minn. 124, 80 N. W. 853.)

Varian & Norris, for Respondents.

The allegations of paragraph 8 of the amended complaint are not sufficient, as not covering the requirements of the statute requiring indorsement and delivery.   (14 Ency. Pl. & Pr. 518; *People's Bank v. Etting,* 12 Phila. 230; *Jemison v. Birmingham & A. R. Co.,* 125 Ala. 378, 28 So. 51; *Baker v. Malone,* 126 Ala. 510, 28 So. 631.)

A warehouseman is not authorized to deliver goods stored with him to a stranger who presents a bill of lading not indorsed and who is not identified in any way as consignee or as having any right to the bill of lading or goods which it

covers. (*Cavallaro v. Texas & P. R. Co.,* 110 Cal. 348, 52 Am. St. 94, 42 Pac. 918.)

Courts are not at liberty to construe a statute contrary to its ordinary and grammatical meaning, merely because such a construction is necessary to render it effective. (*Remington v. State,* 1 Or. 281.)

"There can be no constructive offenses, and, before a man can be punished, his case must be plainly and unmistakably within the statute." (*United States v. Lacher,* 134 U. S. 624, 10 Sup. Ct. 625, 33 L. ed. 1080; *State v. Lovell,* 23 Iowa, 304; *United States v. Wiltberger,* 5 Wheat. (U. S.) 76, 5 L. ed. 37; 2 Lewis' Sutherland, Stat. Const., 2d ed., p. 521, and cases cited.)

The cause of action here is primarily against the corporation and cannot be shifted to its agents and directors unless it be first shown that the plaintiff (appellant) has exhausted its remedy against the principal, the corporation. (2 Purdy's Beach on Private Corporations, secs. 750, 753, and cases cited; *Penney v. Bryant,* 70 Neb. 127, 96 N. W. 1033.)

The directors of a corporation are under no positive obligation to creditors, except in the event of the company's insolvency. (1 Morawetz on Private Corporations, 569, 795.)

BUDGE, District Judge.—This action was brought by the Frontier Milling and Elevator Company, a corporation, against the Roy White Co-operative Mercantile Company, Limited, a corporation, Roy White, E. J. Patch, John Bechtel, C. S. Applegate, J. T. Stephens and David Donnan, to recover damages for the failure and refusal of said corporation to deliver certain grain, potatoes, etc., upon the presentation of warehouse receipts therefor, issued by the respondent corporation herein to the Pioneer Grain and Elevator Company, and by it sold, assigned and delivered to the appellant herein.

Roy White was the president and manager of the Roy White Co-operative Mercantile Company, Limited, and Roy White, together with the individuals heretofore named, constituted the board of directors of the said the Roy White Co-operative Mercantile Company, Limited.

From the records it appears that neither the Roy White Co-operative Company, Limited, nor Mr. White, its president and manager, were served with process, and neither have appeared in this action.

There are two causes of action alleged in the amended complaint. The first cause of action in substance alleges that the respondent corporation was engaged in operating a public warehouse at Weiser, Idaho; that the above-named individuals were, during all the times mentioned in the complaint, the directors of the Roy White Co-operative Mercantile Company, Limited, except David Donnan and John Bechtel, who became directors in January, 1912. The plaintiff alleges that between September 1, 1911, and December 20, 1911, the Roy White Co-operative Mercantile Company executed and delivered to the Pioneer Grain and Elevator Company warehouse receipts for certain grain, seeds, potatoes and other produce delivered to the said the Roy White Co-operative Mercantile Company, Limited, by the Pioneer Grain and Elevator Company for the use and benefit of the appellant herein, and that said warehouse receipts were issued under the provisions of the statutes ·of this state relative to the issuance of warehouse receipts.

Appellant in its amended complaint alleges that prior to December 20, 1911, the Pioneer Grain and Elevator Company sold, assigned and delivered the warehouse receipts above mentioned to the appellant; that on the 20th day of December, 1911, appellant and respondents entered into a contract set forth as exhibit "A," and made a part of appellant's complaint; that thereafter the grain and potatoes called for by the warehouse receipts were stacked and piled in a separate place in the warehouse after appellant became the owner thereof; that on the 20th day of April, 1912, the appellant presented to the respondents the warehouse receipts and tendered the amount of storage due thereon, and demanded the property represented by the warehouse receipts; that the respondents failed and refused to deliver the grain, seeds and potatoes, called for by the warehouse receipts; that the respondents unlawfully sold and converted said grain and other produce to their own use; that Patch, Bechtel, Applegate,

Stephens and Donnan, directors of the said the Roy White Co-operative Mercantile Company, Limited, had full knowledge of the fact that the defendant, Roy White, general manager, of said corporation, was embezzling and converting to the use and benefit of the respondent corporation the grain and produce so stored with it by the owner thereof contrary to law and in violation of a written contract theretofore entered into between appellant and respondents, and that said directors unlawfully suffered and permitted the said above wrongful acts.

The appellant seeks to recover in its first cause of action against the directors personally as damages sustained herein the sum of four thousand dollars ($4,000), after deducting the amount due for storage.

The appellant's second cause of action contains practically all of the allegations contained in the first cause of action, except those matters that are alleged touching notice and knowledge of the directors herein named and the wrongful acts of Roy White. The appellant in said second cause of action seeks to recover the same amount of damages against the corporation that is sought to be recovered in its first cause of action against the directors.

To the amended complaint, E. J. Patch, J. T. Stephens, C. F. Applegate, John Bechtel, and David Donnan, each of the defendants herein named, interposed a demurrer on the ground that said complaint did not, as to them, state a cause of action. The demurrers were argued, submitted and sustained. Thereupon from said order and judgment sustaining these demurrers the appellant herein, and the plaintiff in the court below, has appealed.

The first question presented upon this appeal by the respondents is a question of pleading and involves the interpretation and construction of sec. 1493 of the Rev. Codes, as amended by Session Laws of 1911, p. 111, sec. 6; said section as amended reads as follows, to wit: "Any person, firm or corporation, superintendent or trustees of any board of directors of any firm or corporation, who shall violate

any of the provisions of this chapter shall be guilty of a felony. . . . .''

From reading the above amendment it is apparent that the word ''of'' was inserted in the act on the third line in lieu of the word ''or.'' The insertion of the word ''of'' was evidently a clerical error, and no doubt the act was clearly intended by the legislature to read as follows: ''Any person, firm or corporation, superintendent or trustees, or any board of directors of any firm or corporation, etc.''

To hold otherwise, that portion of the section of the statute just referred to would convey no meaning and would be an absolute absurdity. We think the rule is well stated in Black on Interpretation of Laws, pages 151 and 157, that ''the use of inapt, inaccurate or improper terms or phrases in a statute will not defeat the act, provided the real meaning of the legislature can be gathered from the context or from the general purpose and tenor of the enactment. In such cases, the words in question will be interpreted according to that meaning which the legislature actually intended to express, although this may involve a departure from the literal signification.''

''Clerical errors or misprints, which, if not corrected, would render the statute unmeaning or nonsensical, or would defeat or impair its intended operation, will not vitiate the act; they will be corrected by the court and the statute read as amended, provided the true reading is obvious and the real meaning of the legislature is apparent on the face of the whole enactment.'' The word ''and'' in a statute may be read ''or,'' and *vice versa,* whenever the change is necessary to give the statute sense and effect, or harmonize its different parts, or carry out the evident intention of the legislature. We think we are clearly within the rule in our construction of the above statute as far as this question is concerned.

A further objection urged by the counsel for the respondents in his brief is under sec. 1491, as well as under sec. 3488, which sections provide that the indorsement upon a warehouse receipt may be written on the instrument itself or upon a paper attached thereto, or that the signature of the indorser without additional words is a sufficient indorsement; and that

to allege in the complaint that prior to the 20th day of December, 1911, said Pioneer Grain and Elevator Company duly and regularly, and for a valuable consideration, sold, assigned and delivered each and every of the warehouse receipts to this appellant who thereby became the owner and holder and entitled to the possession of the same, is not a sufficient allegation and does not in this respect state a cause of action, for the reason that the terms "sold, assigned and delivered" do not meet the requirements of the sections above cited, and that in order for the appellant to have stated a cause of action in this regard it became imperative that it should have alleged in the exact terms of the statute that the indorsement was written upon the warehouse receipt itself, or upon a paper attached thereto, or that it contained the signature of the indorser, otherwise there could be no valid transfer by the Pioneer Grain and Elevator Company to the appellants of the property represented by the warehouse receipts.

Statutes similar to our own, which authorize a transfer of warehouse receipts by indorsement, have been generally construed not to prevent a valid transfer by any method previously effectual. (*Toner v. Citizens' State Bank*, 25 Ind. App. 29, 56 N. E. 731.)

The terms "sold, assigned and delivered" would be as equally effective to convey the title to the produce represented by the warehouse receipts, and would have the same legal effect as to have used the exact language contained in the statute, and would certainly be sufficient to hold harmless the corporation operating the warehouse in delivering to the holder of the receipts the property described therein, and this could be the only purpose of the statute.

The appellant in its complaint alleges in paragraph 10 that after it became the owner of said grain, seeds and potatoes, called for and represented by said warehouse receipts, it caused the respondent corporation to pile said property, which was sacked, in a separate part of its warehouse, keeping the same separate and apart from all other grain and produce stored in said warehouse, and caused the respondent corpora-

tion to mark said sacks plainly with the name of the appellant.

For the purposes of this demurrer, we must accept the allegations of the amended complaint as being true. This conduct upon the part of the respondents was at least an acknowledgment of the validity of the transfer of the receipts, as well as of the property represented therein. To permit the respondents to successfully relieve themselves from liability in the face of their conduct in this respect would be a plain violation of the appellant's rights, and the respondent should be estopped from denying the validity of the transfer of the receipts and of the property represented by the receipts in the face of their conduct in this regard. (*State v. Henzell,* 17 Ida. 725, 107 Pac. 67, 27 L. R. A., N. S., 159.)

Under the common law, warehouse receipts were not negotiable. They were, however, assignable as other contracts and the transfer of warehouse receipts had the same effect as the delivery of the goods themselves, and operated to vest in the assignee the assignor's title to the goods, but no better title nor right than that of the assignor. The assignee was not entitled to bring suit in his own name, and the warehouse receipts were subject to equities available against the assignor, but our statutes, as well as the statutes of many states, have abrogated this rule and made warehouse receipts assignable by indorsement and negotiable. They may be transferred by indorsement, and such indorsement shall be deemed a valid transfer of the commodity represented by the receipts and may be made either in blank or to the order of another. No particular form of indorsement or assignment is necessary, provided there is manifest an intention to transfer the property in the goods. (*Weil v. Ponder,* 127 Ala. 296, 28 So. 656; *Toner v. Citizens' State Bank,* 25 Ind. App. 29, 56 N. E. 731; *State v. Loomis,* 27 Minn. 521, 8 N. W. 758; *Sloan v. Johnson,* 20 Pa. Sup. Ct. 643; 40 Cyc. 416.)

The sale and delivery of the warehouse receipts is a complete delivery of the commodities represented by the receipt to the purchaser and passes the title. (*Horr v. Barker,* 11 Cal. 393, 70 Am. Dec. 791.)

As between the parties to a sale of goods on store in a warehouse, the delivery of an order on the warehouseman for the goods by the seller to the buyer is a delivery, and passes the title to the latter so as to render him liable for the price. (*Ghirardelli v. McDermott,* 22 Cal. 539.) The transfer of a warehouse receipt in good faith, and in the ordinary course of business, operates to transfer to the holder the title to the goods covered by the receipt. (*Davis v. Russel,* 52 Cal. 611, 28 Am. Rep. 647; *Rock Springs National Bank v. Luman,* 6 Wyo. 123, 42 Pac. 874.)

Does a complaint state a cause of action against a board of directors of a public warehouse corporation under sec. 1493 of the Revised Codes as amended by Sess. Laws of 1911, p. 111, sec. 6, wherein it is charged that the general manager of said corporation, with the full knowledge of the board of directors and with their consent and acquiescence, wrongfully embezzled and converted to the use and benefit of said corporation, grain and other produce stored in said public warehouse by the owner thereof contrary to law and in violation of an express contract with said warehouse corporation, which contract provided among other things that said grain and other produce should not be sold or removed from said warehouse, except upon the written order of the owner thereof and the surrender of the warehouse receipts given by said warehouse corporation to the owner?

Sec. 1493, *supra,* as amended reads as follows: "Any person, firm or corporation, superintendent or trustees of any Board of Directors of any firm or corporation, who shall violate any of the provisions of this Chapter shall be guilty of a felony, and, upon conviction thereof, shall be fined in any sum not to exceed Five Thousand Dollars ($5000.00) or be imprisoned in the penitentiary of the State not exceeding five years or both; and in case of a corporation, the person acting for such corporation shall be liable for a like punishment upon indictment and conviction, and all and every person or persons aggrieved by a violation of this Chapter, may have and maintain an action at law against the person or persons, corporation or corporations, violating any of the provisions of

this Chapter, to recover all damages, immediate or consequential, which he or they may have sustained by reason of such violation, before any court of competent jurisdiction, whether such person shall have been convicted under this Chapter or not.''

Appellant, in paragraphs 13, 14, and 15, of its amended complaint, charges both the corporation, and its directors, White, Patch, Applegate, Stephens, and Donnan, that they unlawfully, wrongfully, in violation of the rights of the appellant and contrary to the contract between the appellant and respondents, and without the written consent of the appellant therefor, and contrary to the law governing public warehousemen, seized, sold and converted to its own use the said grain and other produce represented by said warehouse receipts, and the whole thereof, and refused to pay the appellant for the same, or any part thereof; that the said directors, with full knowledge of the contract as set forth in appellant's exhibit ''A'' attached to its complaint, and with full knowledge that the defendant, the Roy White Co-operative Mercantile Company, Limited, and Roy White, its general manager, and one of the codirectors, was selling and disposing of said grain of the appellant contrary to the provisions of the statutes of the state of Idaho regulating and controlling public warehouses, and in violation of the contract entered into between appellant and respondent, and without requiring a written order from the appellant, authorizing the said Roy White, as such general manager, to dispose of the same, and without requiring the surrender of the said warehouse receipts for said grain did unlawfully, wrongfully and in violation of the rights of this appellant suffer and permit the said corporation, and said Roy White, the general manager of said corporation, to wrongfully and unlawfully sell and dispose of said grain and convert the same to the use and benefit of the said respondent; that during all the times mentioned the said directors had knowledge that the defendant Roy White, the general manager of said corporation, in running said public warehouse was embezzling and converting to the use and benefit of said corporation the grain and produce stored, and wrong-

fully, and unlawfully permitted the said Roy White, as such general manager, to appropriate said grain and other produce to the use and benefit of said corporation.

The directors of a corporation are its agents and occupy a fiduciary relation to it. They are, therefore, held to the exercise of good faith in all dealings with the public in connection with the business of the corporation, and if they are guilty of official mismanagement, or official misconduct in connection with their duties as such directors, they are personally liable to the party injured. They are answerable for ordinary negligence. This means that they are required to give the business of the corporation that care that every man of common prudence takes of his own concerns, and if the wrongful conversion of the grain and the other produce of the appellant was caused or suffered by reason of the wrongful and careless conduct on the part of the directors, they cannot shift their responsibility. What constitutes a proper performance of the duties of a director is a question of fact which must be determined in each case in view of all the circumstances. The relation of the corporation and appellant prior to the wrongful conversion of the produce represented by the receipts was not that of debtor or creditor, but bailor and bailee. The title to the grain remained, under the statutes regulating warehouse corporations, in the appellant. The respondent corporation was a bailor for hire. The directors of the respondent corporation are presumed to know the relationship that existed between the appellant and respondent corporation, and if they, while acting as such directors, wilfully and unlawfully permitted their general manager, with their knowledge and consent, to embezzle and appropriate to the use and benefit of the respondent corporation the grain and other produce of the appellant represented by the warehouse receipts, or by the exercise of reasonable diligence and care could and should have known that the grain stored with them by appellant was being unlawfully diverted and embezzled by their general manager, they would be personally liable for the loss thus sustained. (*Horn Silver Min. Co. v.*

*Ryan,* 42 Minn. 196, 44 N. W. 56; *First National Bank of Merrill v. Harper,* 61 Minn. 375, 63 N. W. 1079.)

Where property is stored in a public warehouse with the express agreement that the same shall not be sold or removed except upon written order, or consent of the owner, and in violation of the statutes and a written contract to that effect, the same is embezzled or otherwise disposed of contrary to said express agreement, and the directors of such corporation had knowledge of that fact, or by the use of ordinary care should have had knowledge that the property so stored was being unlawfully embezzled or otherwise wrongfully disposed of by their general manager, neither the directors of the corporation nor the corporation can be benefited by said wrongful acts and thus escape liability. They are charged under the statute, as we view it, with the duty of acting as a prudent and reasonable person would act in connection with his own affairs, and if they wrongfully, negligently and carelessly permitted the property stored with them to be embezzled and unlawfully disposed of, a right of action will lie against them personally, as well as against the corporation, to recover such damages as the owner of such property may have sustained. It was clearly the intention of the legislature, when enlarging by amendment sec. 1493, to further safeguard and protect the produce of the farmer or member stored with public warehousemen. Boards of directors employ general managers and are presumed to exercise reasonable care in their selection that the property intrusted to their care will be protected from dishonest practices and that such contracts as are entered into will not be violated. It would hardly be fair to indulge the presumption that the legislature intended under sec. 1493, *supra,* to punish by imprisonment in the state penitentiary boards of directors of public warehouses violating the provisions of the statutes governing such public warehouses, and at the same time to prohibit a recovery of damages sustained by the owner of produce stored with them by reason of their carelessness, negligence or inattention to their duties as directors.

Applying these principles to the complaint we think it clearly appears that the amended complaint states a cause of action against the directors, as well as against the corporation, and the court erred in sustaining the separate demurrers filed by the respective directors.

The judgment is reversed and the case is remanded, with instructions to the trial court to overrule the demurrers and require the directors to answer.   Costs awarded to appellant.

Ailshie, C. J., and Sullivan, J., concur.