620 So.2d 545 (1993)
George TURNER and Robin Carter
v.
Howard WILSON and Fred James.
No. 89-CA-1210.
Supreme Court of Mississippi.
June 10, 1993.
*546 Orbie S. Craft, Brandon, for appellant.
Bobby L. Shoemaker, Bay Springs, for appellee.
En Banc.
PRATHER, Presiding Justice, for the Court:

I. INTRODUCTION
The issue raised by this appeal is whether corporate directors are personally liable when the corporate manager of an agricultural grain warehouse wrongfully converts the farmers' grain and applies the proceeds to the debts of the insolvent corporation. Since the evidence against all directors sued was insufficient to demonstrate that all of them authorized, directed, or actively participated in the wrongful conversion, or that all of them had knowledge of the conversion amounting to acquiescence, or that they all breached any duty owed to the farmer plaintiffs, this Court holds that there is no liability as to the appellants here.
George Turner and Robin Carter were unpaid corporate directors of South Central Mississippi Farmers, Inc., a grain warehouse. Two farmers, Howard Wilson and Fred James, sued six of the directors in the Circuit Court of Smith County for wrongful conversion of their soybeans and received a $45,589.81 judgment against George Turner and Robin Carter. The third director, G.A. Henderson, against whom judgment was rendered, did not appeal.
Turner and Carter present two issues for our consideration.
First, they contend the trial court erred in submitting jury instructions which articulated no standard of care or duty owed to creditors of a corporation by the corporate directors for tortious acts committed by the corporation or its employees.
Second, Turner and Carter assail the sufficiency of the evidence establishing their individual liability as corporate directors for the tortious acts of James Overby, their general manager. This Court holds that the trial court should have granted a directed verdict for two of the three directors, the appellants Carter and Turner, on the insufficiency of the evidence as to these two appellants.

II. FACTS
Between October of 1981 and January of 1982 Howard Wilson, a Jasper County farmer, and Fred James, a farmer in Smith County, delivered their soybeans to South Central Mississippi Farmers, Inc. (South Central), an agricultural supply and grain business in Taylorsville that, among other things, purchased, stored, and sold soybeans. The soybeans were delivered with instructions from Wilson and James to store the beans until they were ready to sell them.
James Overby, South Central's agent and general manager, accepted the soybeans and gave receipts to both plaintiffs. In February of 1982 the plaintiffs advised South Central they were ready to sell their beans at the current market price. They *547 learned their soybeans had been sold by Overby, South Central's manager, and that there was no money left in the corporate accounts with which to pay them. It is undisputed that Robin Carter and George Turner served on the seven (7) member Board of Directors for the corporation at the time in question. It is, likewise, undisputed that Overby, without the permission or knowledge of Wilson or James, used the proceeds of the sale to pay corporate debts.
Wilson, James, and five other farmers aggrieved over the loss of their soybeans thereafter brought suit against South Central, Overby, and several others for the wrongful conversion of their beans. A jury verdict entered against the corporation for the value of the beans was affirmed by this Court in Wilson, et al. v. South Cent. Mississippi Farmers, Inc., et al., 494 So.2d 358 (Miss. 1986). Directed verdicts entered by the trial court in favor of Overby and another not implicated in the present appeal were reversed by this Court in the same case. At the time of the lawsuit providing a basis for this appeal, separate suits against Overby and others were pending.
On February 6, 1986, Wilson and James, seeking both actual and punitive damages, initiated an action against the individual directors of South Central. A money judgment for the value of the beans was entered against three of them, Turner, a resident of Simpson County, Carter a resident of Rankin County, and G.A. Henderson of Smith County, who has not joined in the appeal to this Court.

III. ANALYSIS

A. JURY INSTRUCTIONS

1. FACTS
Appellants contend that jury instructions P-5, P-6, and P-10, given at the plaintiffs' request, were erroneous and that the jury was not fully and properly instructed as to the applicable law. Basically, they complain the instructions were legally incorrect because they permitted the jury to hold Turner and Carter personally liable for the tort of other directors, officers, and agents of the corporation and because they failed to provide adequate guidance to the jury as to the standard of care and the duty owed by directors of a corporation to its customers and creditors or to explain how Turner and Carter may have breached that duty.
Instruction P-5 instructed the jury that the appellants, as directors of the corporation, were liable for the torts of the manager of the corporation if the manager acted within the scope of his duty[1]. According to Turner and Carter, the vice of this instruction is that it required no finding of complicity on the part of the directors in the manager's tort before holding them liable.
Instruction P-6 instructed the jury that the directors, even though they acted on behalf of the corporation and even though the corporation itself is liable, could be held liable if it found they converted the beans without authority from the plaintiffs[2]. Turner and Carter contend this instruction lacks evidentiary support and that the charge conflicts with other instructions.
Instruction P-10 predicated liability of all or any one or more of the defendants on the jury's findings that Wilson and James delivered their soybeans to South Central for storage, that the beans were sold by Overby without the consent of Wilson or James, and that neither Wilson nor James had been paid for the beans[3]. Turner and Carter contend the charge was erroneous *548 because there was no legal requirement holding them to such a standard of conduct.
Wilson and James argue that each of the criticized instructions correctly recited the applicable law, but if not, the instructions, when taken collectively and viewed as a whole, correctly advised the jury of the applicable rules of law.

2. LAW
This case questions the liability of corporate directors to creditors of the corporation. As has been held in Wilson v. Stevens, 129 Ala. 630, 29 So. 678 (1901), "[d]irectors may be liable to stockholders for mismanagement of the business of the corporation or waste of its assets. Not so as to its creditors. A creditor must show actual fraud in order to hold directors liable." Wilson, 29 So. at 679. Ordinary principles of agency apply to officers of a corporation and their liability to third persons. This state follows the rule that an authorized agent for a disclosed principle cannot be liable for the acts of the agent's corporate principal. Thames & Co. v. Eicher, 373 So.2d 1033 (Miss. 1979).
Mississippi follows the general rule that individual liability of corporate officers or directors may not be predicated merely on their connection to the corporation but must have as their foundation individual wrongdoing. This Court observed in Mississippi Printing Co., Inc., v. Maris, West & Baker, Inc., 492 So.2d 977, 978 (Miss. 1986) that "the general rule is well established that when a corporate officer directly participates in or authorizes the commission of a tort, even on behalf of the corporation, he may be held personally liable." See also Wilson v. South Cent. Mississippi Farmers, Inc., supra, 494 So.2d at 361 ["(A)ny officer or agent of a corporation who actively participates in the commission of a tort [conversion] is personally liable to third persons injured thereby."]; First Mobile Home Corp. v. Little, 298 So.2d 676 (Miss. 1974); Grapico Bottling Co. v. Ennis, 140 Miss. 502, 106 So. 97 (1925); Mozingo v. Correct Mfg. Corp., 752 F.2d 168, 174 (5th Cir.1985) ["The thrust of the general rule is that the officer to be held personally liable must have some direct, personal participation in the tort, as where the defendant was the guiding spirit behind the wrongful conduct or the central figure in the challenged corporate activity."] Our sister state of Alabama also adheres to the general rule. Ex Parte Charles Bell Pontiac-Buick-Cadillac-GMC, Inc. v. Bell, et al., 496 So.2d 774, 775 (Ala. 1986) ["(T)he general rule is that officers or employees of a corporation are liable for torts in which they have personally participated ..."]
In Wilson, supra, this Court quoted with approval the applicable rule to be:
The rule that directors, officers, or agents of a corporation are liable for their torts to a person injured thereby, ... is applicable where they are guilty of conversion. This is true even though they act in behalf of the corporation and although the corporation may also be liable, as where money or property of a third person is in the hands of the corporation and the officers in control knowingly and intentionally convert it by refusing to give up possession, or by applying it to the uses of the corporation; and it is also true even though the directors, officers, or agents act in good faith, and do not personally benefit or profit from the conversion. All who are concerned or participate in the wrong are personally liable. [emphasis supplied]
19 C.J.S. Corporations § 849, p. 276.
The liability of corporate directors to creditors and third persons is also addressed in 19 C.J.S. Corporations § 544, p. 175 (1990) as follows:
A director, officer, or agent is liable for the torts of the corporation or of other directors, officers, or agents when, *549 and only when, he has participated in the tortious act, or has authorized or directed it, or has acted in his own behalf, or has had any knowledge of, or given any consent to, the act or transaction, or has acquiesced in it when he either knew or by the exercise of reasonable care should have known of it and should have objected and taken steps to prevent it.

What is required is some showing of direct personal involvement by the corporate officer in some decision or action which is causally related to plaintiff's injury. * * * [emphasis supplied]
The granting of instruction P-5 holding the directors responsible and liable for Overby's actions if Overby acted within the scope of his duty was error. The instruction, much to the detriment of Turner and Carter, fails to take into account that before liability attaches the corporate officer must either directly or actively participate in the commission of a tort or authorize the commission of a tort. As noted, a corporate officer or director is not, merely by reason of his corporate office, personally liable to creditors and third persons for the torts of other directors, officers, or managers. He is, on the other hand, personally liable for his own wrongful deeds. 19 C.J.S. Corporations § 537, p. 165 (1990).
Instruction P-6 instructed the jury that each of the five individual defendants were liable for the conversion of soybeans if it found that "defendants" converted the beans without any authority from the plaintiffs. This instruction directs that one director, such as Carter, may be held liable for the conversion by any other director, such as Turner, and vice versa.
Jury instruction P-10 allowed the jury to return a verdict against all or any one or more of the five (5) corporate defendants upon a simple finding the beans were delivered to South Central for storage and were sold by Overby without the consent of, or payment to, the two plaintiffs. The instruction required no complicity in the tort by the defendants before attaching liability and permitted the jury to pick and choose at will among the individual defendants those whom it desired to hold responsible. This served to exacerbate the problem with P-5 which failed to provide adequate guidance to the jury on the legal basis for attaching liability to a given defendant.
One final note on the issue of instructions. Wilson and James claim "[t]he pivotal question was presented to the jury as to whether the board authorized the conversion and the jury found that three of the directors had." (Brief of Appellees at p. 7) Although appellees have correctly described one of the pivotal questions in this case, the jury instructions failed to present the issue of whether the corporate directors authorized the conversion. This Court concurs with the observations of Turner and Carter the jury did not receive proper instructions in this case.
It is urged that the submission of Instruction 7-D[4] did cure these defects. However, the language in 7-D is in conflict with the abstract premises articulated in P-5 and P-6. The jury could have been easily mislead by these instructions and could have well imputed liability to Turner and Carter simply because of their office as corporate directors. Because of this Court's disposition as to the second assignment of error, it is not necessary to predicate reversal on this ground.

B. SUFFICIENCY OF EVIDENCE

1. FACTS
At the close of the plaintiffs' case-in-chief the defendants moved for a directed verdict on the ground, inter alia, the evidence failed to make out a jury issue as to *550 their liability. The motion was renewed at the close of all the evidence, and a request for judgment notwithstanding the verdict followed. Turner and Carter claim the evidence was legally insufficient to sustain the verdict returned. This Court agrees that the evidence, as to Turner and Carter, was insufficient to show that either one authorized, directed, or actively participated in the conversion of the plaintiffs' beans.
This is a lawsuit for wrongful conversion. The plaintiff bears the burden of producing evidence sufficient to establish the existence of the conventional tort elements of duty, breach of duty, proximate causation, and injury. There is no proof in this record that Turner and Carter breached any duty owed to the plaintiffs as creditors of the corporation, and none was presented in the jury instructions.
Wilson and James presented their own testimony, the testimony of three defendant/directors, and the testimony of the corporate manager, Jim Overby. None of this testimony was sufficient to show that Turner and Carter authorized or knowingly participated in the wrongful conversion of the plaintiff's beans. Neither Wilson nor James could pinpoint any individual wrongdoing by either Turner or Carter.
Overby, a former corporate director who had become manager in July of 1980, testified he was authorized by the board of directors to run the business. This included all transactions involving the purchase, storage, and sale of soybeans. No written authorization of any kind existed; rather, the scope of Overby's duties was strictly a by-product of past practice and experience.
Overby freely admitted the farmers' money was used to pay corporate debts and that he and director Henderson, whom the jury found liable, were the only persons authorized to sign corporate checks which required two signatures. He acknowledged that in 1981 or early 1982 no board member had anything to do with the disposition of the farmers' money. It was not corporate policy to present every bill to the board of directors for prior approval. There were two corporate bank accounts, a general account and a special account. The latter functioned as an escrow or trust account into which the bean money was placed for the benefit of the farmers. Overby was the only person authorized to draw money from the special account, and the board did not restrict his use of these funds. He testified that neither Turner nor Carter authorized him to draw from this account; rather, he did it on his own because he had full authority to run the bean business.
The directors of South Central were in the process of selling the business to Tom Kennedy who had his employee assist Overby in the transition. Kennedy insisted that certain repairs needed to be made to the storage bins. The board authorized that the repair be made. Overby transferred money from the special funds to the general fund to cover the repair cost.
Overby further testified that neither Turner nor Carter instructed him to use or not to use the plaintiffs' money for any particular purpose. Overby was not aware of anything the board of directors did or failed to do to cause the farmers to lose their money. Indeed, he had been instructed by the board the main objective was to protect the farmer. The only two people Overby recalled being on the board at the time of the alleged conversion in the fall of 1981 was Roberts and Henderson. Overby denied he was instructed by the board as a single entity or by any individual member of the board not to buy or sell soybeans during the fall of 1981.

2. LAW
In deciding if the motion for directed verdict on the issue of individual liability was due to be granted, the trial court must view the evidence most favorably to the non-moving party, and if by any reasonable interpretation, it can support an inference of individual liability which the non-moving party seeks to prove, the motion must be denied. Wilson v. South Cent. Mississippi Farmers, Inc. et al., supra; Paymaster Oil Mill Co. v. Mitchell, 319 So.2d 652 (Miss. 1975). "We take a like view of the evidence when considering on appeal the *551 charge that the Circuit Court erred in directing a verdict." Gray v. Edgewater Landing, Inc., 541 So.2d 1044, 1046 (Miss. 1989).
Viewed in the light most favorable to the plaintiffs, the proof, as to Turner and Carter, demonstrated only that they were members of a corporate board of directors that had given Overby blanket authorization to conduct soybean transactions during the fall of 1981. There is no evidence that Turner or Carter made the decision regarding the acceptance and sale of plaintiffs' beans for South Central, that they personally signed any of the weight certificates upon delivery and acceptance of the plaintiffs' beans, that they signed or issued any corporate checks, or did any other act pointing to active participation in the conversion or authorization of the wrongful conduct.
Although Henderson, Turner, and Carter testified they were aware prior to the fall of 1981 the corporation was on shaky financial footing, and each of them claimed that Overby had been instructed not to buy or sell any beans during this time frame, this does not change the complexion of things. This Court accepts as true Overby's testimony he was never so instructed and that he had been granted authority at some point in the past to sell stored soybeans. Even if Overby had the authority of the board to buy and to sell in the fall of 1981, he did not have the authority of the board to commit conversion. This testimony, standing alone, is insufficient to justify a finding that Turner and Carter authorized the wrongful conversion of plaintiffs' beans.
While the corporation itself had a duty to protect the plaintiffs' beans once they were accepted for storage, and while the corporation in the former decision Wilson, supra, was found to have breached that duty when the beans were converted and plaintiffs were not paid, the personal liability of the corporate directors must hinge upon a breach of their duty to refrain from wrongful deeds.
Aside from the failure of the board as an entity to conduct regular meetings, to take and record minutes, to examine records and to otherwise keep a watchful eye on Overby's management activities, and aside from Carter's brief tenure as secretary of the corporation during the fall of 1981 and early 1982, there is no proof Turner or Carter authorized, directed or actively participated in the wrongful conduct, i.e., the conversion of plaintiffs' beans.

II. CONCLUSION
The evidence was legally insufficient to demonstrate personal liability on behalf of Turner and Carter. This cause is reversed and rendered as to appellants George Turner and Robin Carter.
REVERSED AND RENDERED AS TO GEORGE TURNER AND ROBIN CARTER.
HAWKINS, C.J., and SULLIVAN, PITTMAN, BANKS, ROBERTS and SMITH, JJ., concur.
McRAE, J., concurs in part and dissents in part with separate written opinion joined by DAN M. LEE, P.J.
McRAE, Justice, concurring in part and dissenting in part:
While I agree with the majority's finding that the jury was inadequately instructed on the applicable law of corporate director liability, I disagree with its conclusion that the circuit court should have granted a directed verdict in favor of two of the three directors, appellants Turner and Carter, because the question of their liability was properly a matter for a jury to decide. Moreover, in setting forth its standard for determining liability of corporate directors, the majority incorrectly limits liability to only those instances where a board member has actively or directly participated in an employee's tortious action. Further, the majority fails to recognize that liability may also exist where, by the exercise of reasonable diligence and care, the directors could have and should have known that an employee was converting the farmers' crops and the proceeds of their sale for corporate use, when that malfeasance was *552 made possible by the directors' acquiescence or failure to act.
The majority has decided that the case should be reversed and rendered. I would, however, reverse and order a new trial because of the inadequate instructions given to the jury. Instructions P-5, P-6 and P-10, even when read together, are too abstract to provide proper guidance for the jury. Instruction D-7 is a true statement of the law at the time, but fails to cure the other instructions as given.
In Wilson v. South Central Mississippi Farmers, Inc., 494 So.2d 358 (Miss. 1986), where we affirmed the liability of the corporation, itself, and remanded for trial on the issue of the liability of South Central's manager and agent for conversion of the proceeds of Wilson's soybeans, we found that the applicable rule with regard to director liability for conversion was as follows:
The rule that directors, officers, or agents of a corporation are liable for their torts to a person injured thereby, ... is applicable where they are guilty of conversion. This is true even though they act in behalf of the corporation and although the corporation may be liable, as where money or property of a third person is in the hands of the corporation and the officers in control knowingly and willfully convert it by refusing to give up possession, or applying it to the uses of the corporation; and it is also true even though the directors, officers, or agents act in good faith, and do not personally benefit or profit from the conversion. All who are concerned or participate in the wrong are personally liable.

Wilson, 494 So.2d at 361, quoting 19 C.J.S. Corporations § 849. (emphasis added)
It is undisputed that Overby, a former director who had become South Central's agent and general manager, converted proceeds of soybean sales to pay debts of the corporation. There was evidence that the corporation was in dire financial straits and in the process of being sold at the time the appellees' soybeans were stored there. Further, there was disputed evidence that Overby had been given instructions to not buy or sell any soybeans during the time period in which the conversion occurred. Given the circumstances and the fiduciary duties Carter and Turner owed to the farmers, a reasonable director exercising reasonable care should have assumed an active role in monitoring the corporation's financial affairs. In this case, the directors appeared to play only a figurehead or "dummy" role, failing to conduct regular board meetings, take and record minutes or examine the records of the corporation. In effect, they kept their heads in the sand, like ostriches, while the proceeds from the sale of the farmers' soybeans were used to pay the debts of the corporation.
At the time of the incident complained of, this Court had considered a number of cases where a corporate director or officer was charged with directly participating in, or authorizing, a tortious action and followed the general rule that, under those circumstances, a director could be personally liable. First Mobile Home Corp. v. Little, 298 So.2d 676 (Miss. 1974); Grapico Bottling Co. v. Ennis, 140 Miss. 502, 106 So. 97 (1925). See also Mississippi Printing Company, Inc. v. Maris, West & Baker, 492 So.2d 977 (Miss. 1986). We had not addressed the liability of an officer or director for his acquiescence or failure to act. Other jurisdictions, however, had recognized that even in the absence of direct participation in a tortious action, a director's inaction may give rise to liability. Francis v. United Jersey Bank, 87 N.J. 15, 432 A.2d 814 (1981). Since that time, corporations law in Mississippi has evolved by statute to recognize that under certain circumstances, a director may be held liable for the tortious acts of corporate employees, even when the director has not participated directly in the commission of the tort. Thus, failing to act, when there is a duty to do so, may render a director liable. The extent of a director's liability to creditors and other third parties has been defined as follows[1]:

*553 A director, officer, or agent is liable for the torts of the corporation or of other directors, officers or agents when, and only when, he has participated in the tortious act, or has authorized or directed it, or has acted in his own behalf, or has had any knowledge of, or given any consent to, the act or transaction, or has acquiesced in it when he either knew or by the exercise of reasonable care should have known of it and should have objected and taken steps to prevent.

19 C.J.S. Corporations § 544 (1990) (emphasis added).
The extent of a director's duty, and thus, his potential liability, are predicated, in part, on the nature of the corporation's relationship with the injured third party. The highest duty owed, of course, is to the corporation's shareholders. Generally, this fiduciary relationship extends to creditors only when the corporation is insolvent. However, a fiduciary duty also exists toward "creditors" who have deposited something of value with the corporation for safekeeping. The majority, therefore, mischaracterizes Wilson and James as mere creditors. In reality, they are owed the same duty as depositors in a bank or pension fund. Like any other other depositor, they had delivered their crops for safekeeping with instructions not to sell until authorized. Other jurisdictions long have recognized that the directors of a commodity storage operation have a duty to farmers who place their crops in safekeeping and may be liable to them when the proceeds of the crop sales are converted or embezzled.
In Richards v. North Henderson Grain Co., 308 Ill. App. 386, 32 N.E.2d 189 (1941), proceeds from the sale of grain stored with the corporation had been regularly converted to meet the expenses of the operation. The Illinois Court found that "the presumption is that the officers and directors would have discovered the wrong doing if they had been reasonably diligent, and under the circumstances, if there was a lack of knowledge on their part, it would present a case of gross negligence unless properly explained." 32 N.E.2d at 190.
Likewise, in Frontier Milling & Elevator Co. v. Roy White Co-Operative Mercantile Co., 25 Idaho 478, 138 P. 825 (1914), where grain and potatoes stored at a warehouse had been converted by its manager, the Idaho Court discussed the duties that the directors of the facility owed to the public who stored its produce there:
The directors of a corporation are its agents, and occupy a fiduciary relation to it. They are therefore held to the exercise of good faith in all dealings with the public in connection with the business of the corporation, and if they are guilty of official mismanagement or official misconduct in connection with their duties as such directors, they are personally liable to the party injured. They are answerable for ordinary negligence. This means that they are required to give the business of the corporation that care which every man of common prudence takes of his own concerns, and, if the wrongful conversion of grain and the other produce of the appellant was caused or suffered by reason of the wrongful and careless conduct on the part of the directors, they cannot shift their responsibility.

138 P. at 829. (emphasis added). The court noted that liability was not limited to those instances where the directors actually participated in the wrongdoing, stating that:
[I]f they, while acting as directors, willfully and unlawfully permitted their general manager, with their knowledge and consent, to embezzle and appropriate ..., or by the exercise of reasonable diligence and care could have and should have known that the grain stored with them by appellant was being unlawfully diverted and embezzled by their general manager, they would be personally liable for the loss thus sustained.
138 P. at 829. (emphasis added).
Mississippi's caselaw is silent on the subject of whether a corporate director may be *554 liable for his failure to act when some positive action is warranted. Francis v. United Jersey Bank, 87 N.J. 15, 432 A.2d 814 (1981), however, provides an instructive look at the circumstances under which a corporate director may be found liable for inaction or acquiescence.
In Francis, a director was found to have breached her duty to the corporation's clients by doing nothing while her sons, who were corporate officers and directors, misappropriated the clients' funds. An elderly lady who "`sometimes consumed too much alcohol and was psychologically overborne by her sons,'" the director was not active in the business of the corporation, knew almost nothing of its affairs and was unfamiliar with its financial statements. 432 A.2d at 819-820. Interpreting N.J.S.A. 14A:6-14, analogous to § 79-4-8.30, the New Jersey Court found that "[d]irectors may not shut their eyes to corporate misconduct and then claim that because they did not see the misconduct, they did not have a duty to look. The sentinel asleep at his post contributes nothing to the enterprise he is charged to protect." Id. 432 A.2d at 822. The court further observed that "[a] director is not an ornament, but an essential component of corporate governance." Consequently, a director cannot protect himself behind a paper shield bearing the motto, "dummy director." Id. 432 A.2d at 823.
To meet the minimal standards of care required by the statute, the court found that a director is under a continuing obligation to keep informed about the corporation's activities. Id. 432 A.2d at 822. This includes a regular review of the corporation's financial records and statements. Id. A review of the corporation's financial statements may also give rise to a duty to look further into matters revealed by those records. Id. 432 A.2d at 823. When problems are apparent, the director may have to fulfill his duty by seeking the advice of counsel rather than merely objecting or resigning. Id.
As explained in Francis, the plaintiff bears the burden of showing that his loss was caused by the director's failure to act. The plaintiff must establish not just a breach of duty, "`but in addition, that the performance by the director of his duty would have avoided loss, and the amount of the resulting loss.'" Id. 432 A.2d at 826. (emphasis added). See also Annotation, Liability of Corporate Directors for Negligence in Permitting Mismanagement or Defalcations by Officers or Employees, 25 ALR 3d 941, 958 (1969 and Supp. 1992). In other words, "[t]he act or the failure to act must be a substantial factor in producing the harm." Francis, 432 A.2d at 826 (emphasis added).
As the many cases cited in Francis point out, there is substantial authority for the proposition that a corporate director may be liable for the wrongdoing of the corporation's employees, when, but for an omission or failure to act by members of the board, the wrongdoing would not have occurred. Especially considering the precarious financial position of the grain warehouse, it can be argued that a reasonable director acting in the best interests of the corporation would have examined records and kept a more watchful eye on Overby's management of the operation.
It appears that the legislature sought to follow the common law of corporations when, in 1988, it enacted the Mississippi Business Corporation Act, adopting in part the Revised Model Business Corporation Act, a codification of the common law. Miss. Code Ann. § 79-4-8.30 (1989) outlines the general standard of care for corporate directors as follows:
(a) A director shall discharge his duties as a director, including his duties as a member of a committee:
(1) In good faith;
(2) With the care an ordinarily prudent person in a like position would exercise under similar circumstances; and
(3) In a manner he reasonably believes to be in the best interests of the corporation.
Subsection (b) provides that in discharging the duties of his office, the director may rely on information, opinions, reports or statements which have been prepared by officers or directors of the corporation *555 whom the director reasonably believes to be reliable and competent; legal counsel, accountants and other professionals; and a committee of the board of directors of which the director is not a member if the director reasonably believes the committee to merit confidence.
Subsection (c) specifies that "a director is not acting in good faith if he has knowledge concerning the matter in question that makes reliance otherwise permitted by subsection (b) unwarranted."
Finally, and most relevant to the case sub judice, subsection (d) provides that "a director is not liable for any action taken as a director, or any failure to take any action, if he performed the duties of his office in compliance with this section." (emphasis added). Thus, a director may be found liable if he was not acting in good faith, if he was not performing the duties of his office with the care of a reasonably prudent person in a like position under similar circumstances, or if he was not acting in the best interests of the corporation.
Pursuant to § 79-4-8.30, a corporate director is called upon to be more than a figurehead. A corporate director cannot, in the course of exercising the duties of his office, stand idly by or bury his head in the sand. To avoid liability for any action taken, or for failure to take action, a corporate director must have exercised his duties in compliance with the statute.
In adopting the Revised Model Business Corporation Act, it seems to me that the legislature intended to force directors into playing a more active role in the corporations they manage. Moreover, the statute clearly sets forth the standard of care a director shall follow in exercising his duties and articulates a distinction between action and failure to act. While it has no immediate effect on the case sub judice, the statute is instructive in establishing the parameters of liability for causes of action accruing since its adoption.
Because the question of the directors' liability was properly a matter for a jury to decide, the case should be remanded for consideration by a jury properly instructed in the law of corporate director liability to third parties for conversion of their assets. Accordingly, I dissent.
DAN M. LEE, P.J., joins this opinion.
NOTES
[1] Instruction P-5 is as follows:

The Court instructs the Jury to the fact that even though the Manager, James Overby, was disclosed to the Plaintiffs in this matter, the Directors of the Corporation are responsible for his actions if he acted within the scope of his duty.
[2] Instruction P-6 is as follows:

The Court instructs the Jury that Directors, Officers and agents of a Corporation are liable for their torts to a person injured thereby and if you find that defendants converted the soybeans of the Plaintiffs without authority from the Plaintiffs, that they are liable to the Plaintiffs even though they acted in behalf of the Corporation and even though the Corporation is liable.
[3] Instruction P-10 is as follows:

The Court instructs the Jury that if you find from a preponderance of the evidence that the Plaintiffs, Howard Wilson and Fred James, delivered their soybeans to South Central Mississippi Farmers, Inc., for storage, that the beans were sold by James Overby, Manager of said Corporation, without the consent of Howard Wilson and/or Fred James and Howard Wilson and Fred James have not been paid for their soybeans then you may return a verdict against all the Defendants, or any one or more of them.
[4] You are hereby instructed that if you fail to find from a preponderance of the credible evidence presented for your consideration in this case that one or more of the defendants took some active part in disposing of the money derived from the sale of soybeans placed for storage by Howard Wilson and Fred James with South Central Mississippi Farmers, Inc., or that one or more of the defendants knew or had reason to know that James Overby was diverting funds belonging to Fred James and Howard Wilson to the use of the Corporation or some other use after they should have or did acquire such knowledge and did nothing to stop James Overby from so diverting such funds, then you shall find for all of the Defendants.
[1] The majority cites to the 1990 edition which superseded 19 C.J.S. Corporations § 845 (1940 and Supp. 1980). That edition, however, in effect for some forty years prior to the incident complained of, contains language identical to that highlighted.