# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2009-CA-00351-SCT

### *R. W. WHITAKER AND MONTY FLETCHER*

### *v.*

### *LIMECO CORPORATION AND WILLIAM KIDD*

| | |
|---|---|
| DATE OF JUDGMENT: | 01/30/2009 |
| TRIAL JUDGE: | HON. JAMES LAMAR ROBERTS, JR. |
| COURT FROM WHICH APPEALED: | LEE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | MICHAEL N. WATTS |
| | R. BRADLEY BEST |
| ATTORNEYS FOR APPELLEES: | MARGARET SAMS GRATZ |
| | L. F. SAMS, JR. |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AFFIRMED IN PART; REVERSED IN PART, AND REMANDED - 04/08/2010 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE CARLSON, P.J., LAMAR AND CHANDLER, JJ.**

**CARLSON, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     Failing in their efforts to collect more than $850,000 purportedly owed to them as a result of the trial court's dismissal of their claims against Limeco Corporation and William Kidd, R. W. Whitaker and Monty Fletcher appeal to us for relief.  Although we find that the trial court correctly dismissed some of the claims asserted by Whitaker and Fletcher, we likewise find error on the part of the trial court in dismissing in their entirety all claims asserted by Whitaker and Fletcher against Limeco and Kidd.  Thus, the Lee County Circuit

Court's judgment of dismissal is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

## FACTS AND PROCEEDINGS IN THE TRIAL COURT

¶2. Some of the facts in today's case are gleaned from our opinion in a related case, *Fletcher v. Limeco Corporation*, 996 So. 2d 773 (Miss. 2008). William Kidd served as managing director of Limeco Corporation. Beginning in 2001, negotiations began between Kidd/Limeco, the Defendants/Appellees,[1] and R. W. Whitaker and Monty Fletcher,[2] the Plaintiffs/Appellants, in connection with what later became a failed effort to purchase a hockey team in Tupelo. The Plaintiffs maintain that in the course of these 2001 negotiations, Kidd misrepresented to them that Limeco was a corporation with substantial assets. The Plaintiffs further allege that, as a result of Kidd's misrepresentations, they were fraudulently induced by Kidd to lend Limeco $750,000. According to the Plaintiffs, these loans were made based on Kidd's misrepresentations to the Plaintiffs that, to the extent Kidd could not pay back the loans, Limeco had sufficient assets to repay the loans in full. The Plaintiffs claim Kidd concealed the fact that Limeco had no assets, and in doing so, shared with the Plaintiffs certain financial records and books which showed the corporation to be a  solvent corporation possessing sufficient assets to repay the loans. *See Fletcher*, 996 So. 2d at 774.

---

[1]Except when necessary to refer to William Kidd or Limeco Corporation, individually, they will be referred to collectively as the Defendants.

[2]Except when necessary to refer to R. W. Whitaker or Monty Fletcher, individually, they will be referred to collectively as the Plaintiffs.

¶3.    The Plaintiffs further allege that, on or about February 19, 2002, Kidd induced Whitaker to take out an additional $100,000 loan from Peoples Bank & Trust Company in Tupelo, and, in turn, to lend Kidd the full amount of this loan, which came due on April 19, 2002.  This loan was extended by Whitaker in the form of a continuing guaranty with the understanding that the Defendants would be responsible to the bank for any and all indebtedness of Whitaker to the bank for an amount up to $100,000.

¶4.    On July 1, 2002, the parties entered into what they referred to as promissory notes (referred to as the "Fletcher note" and the "Whitaker note") to memorialize the terms of the loan agreements they had made in early 2002. Both Fletcher and Whitaker, in an effort to secure what they thought were promissory notes, were granted a continuing lien on Limeco's monies, securities, and/or other property for the entire amount of the promissory notes (each in the amount of $375,000).

¶5.    On December 11, 2003, Whitaker and Fletcher filed separate complaints against Limeco and Kidd.[3]  The Plaintiffs  alleged that they had lent  Kidd more than $850,000 that had never been repaid. Both complaints alleged claims of breach of promissory notes. Whitaker also alleged that he had been induced to lend Kidd an additional $100,000 and had allowed Kidd to enter into a continuing guaranty when the loan came due; thus, Whitaker's

---

[3]Actually, the first complaint filed was that of T-REX 2000, Inc., against Brett Kidd and Jamie Kidd for alleged breach of a stock-purchase agreement. This suit was the byproduct of 2001 contract negotiations for the purchase of a hockey team in Tupelo, the T-Rex 2000 team. It later was consolidated with subsequent causes of action. *Fletcher*, 996 So. 2d at 774-75. T-REX 2000, Inc., Brett Kidd, and Jamie Kidd are not parties before this Court in the current appeal.

complaint included both a breach-of-promissory-note claim and breach-of-continuing-guaranty claim. The Lee County Circuit Court dismissed both complaints due to defective service. The cases were consolidated, and the dismissal for lack of proper service was affirmed by this Court on appeal. *Fletcher*, 996 So. 2d at 781.

¶6.     However, on September 18, 2007, during the early stages of the *Fletcher* appeal,[4] the Plaintiffs filed a complaint against Kidd and Limeco in the Lee County Chancery Court, alleging breach of promissory notes, breach of continuing guaranty, fraud, and fraudulent transfer of assets.[5] Due to the alleged fraud, the Plaintiffs sought to pierce the corporate veil in order to include as defendants not only Limeco, but William Kidd, individually. The trial court ultimately found the suit to be time-barred. The breach-of-promissory-note claims were dismissed due to the trial court's determination that the notes did not meet the statutory requirements to be considered instruments of negotiability; thus, according to the trial court, the claims were subject to a three-year breach-of-contract statute of limitations, as opposed to the six-year statute of limitations for a breach-of-promissory-note cause of action. The fraud claims were found to be time-barred because, according to the trial court, the Plaintiffs first had knowledge of the fraud in 2003 when they filed the original suit. As a result,

---

[4]The Supreme Court Clerk's docket in the *Fletcher* appeal reveals, *inter alia*, that a notice of appeal was filed on July 20, 2007, and that on September 27, 2007, the trial court record was filed and a briefing schedule notice was issued.

[5]In addition to fraud in the inducement of the loan agreements, the Plaintiffs also alleged that Kidd caused Limeco's assets to be fraudulently transferred to his own personal entities and entities owned by Kidd's family members.

according to the trial court, the three-year statute of limitations for fraud would have run in 2006. The trial court rejected the Plaintiffs' argument that the factual basis for their fraud claims had been fraudulently concealed from them by Kidd until March 2007. The trial court found that, because the Plaintiffs had failed to establish a basis for a claim of fraud, there was no justification for piercing the corporate veil and holding Kidd responsible for Limeco's failure to repay the $850,000.

¶7.     The Defendants, Limeco and Kidd, filed separate answers and defenses to the complaint. Subsequently, the Defendants filed a motion to dismiss and a motion to stay discovery, to which the Plaintiffs responded. Finally, by mutual agreement, the parties agreed to transfer this case to the Circuit Court of Lee County on February 4, 2008.

¶8.     Following an August 12, 2008, hearing on the Defendants' motion to dismiss, Judge James L. Roberts, Jr., presiding, the trial court entered an order on January 30, 2009, dismissing the complaint on the grounds that the statute of limitations had expired for the breach-of-promissory-note claim, the breach-of-continuing-guaranty claim, and the fraud claim. The trial court rejected the argument made by the Plaintiffs that Kidd fraudulently had concealed the facts supporting their fraud claim. The trial court found the statute of limitations for fraud began running on December 11, 2003, when the Plaintiffs had filed their original claim; thus, according to the trial court, all claims were time-barred as of December 2006. The trial court concluded that, because their fraud claims were time-barred, the Plaintiffs were precluded from bringing a cause of action against Kidd in an individual

5

capacity because, in order to pierce the corporate veil, the Plaintiffs were required to have a viable fraud claim. From the trial court's judgment of dismissal, the Plaintiffs timely appealed to this Court.

## DISCUSSION

¶9.     The Plaintiffs raise the following issues in today's appeal: (1) whether the trial court erred in dismissing the breach-of-promissory-notes claims based on a finding that the promissory notes were not negotiable instruments under Mississippi Code Section 75-3-104 (Rev. 2002), and thus not subject to the six-year statute of limitations; (2) whether the trial court erred in dismissing the fraud and breach-of-continuing-guaranty claims based on its finding that the Plaintiffs did not allege any facts that would toll the three-year statute of limitations; and (3) whether the trial court erred in ruling that Limeco had no corporate liability, and as a result, ruling that the Plaintiffs could not pierce Limeco's corporate veil.

¶10.     When considering issues of law, such as statutes of limitations, this Court employs a *de novo* review.  **Andrus v. Ellis**, 887 So. 2d 175, 179 (Miss. 2004).  When reviewing a trial court's grant or denial of a motion to dismiss or a motion for summary judgment, this Court likewise applies a *de novo* standard of review. **Burleson v. Lathem.** 968 So. 2d 930, 932 (Miss. 2007) (citing **Scaggs v. GPCH-GP, Inc**., 931 So. 2d 1274, 1275 (Miss. 2006); **Park on Lakeland Drive, Inc. v. Spence**, 941 So. 2d 203, 206 (Miss. 2006); **McLendon v. State**, 945 So. 2d 372, 382 (Miss. 2006); **Monsanto Co. v. Hall**, 912 So. 2d 134, 136 (Miss. 2005)). "'When considering a motion to dismiss, the allegations in the complaint must be

6

taken as true and the motion should not be granted unless it appears beyond doubt that the plaintiff will be unable to prove any set of facts in support of his claim.'" *Id*. (quoting *Scaggs*, 931 So. 2d at 1275).

## I. WHETHER THE TRIAL COURT ERRED IN HOLDING THAT THE PROMISSORY NOTES WERE NOT NEGOTIABLE INSTRUMENTS AND THUS NOT SUBJECT TO THE SIX-YEAR STATUTE OF LIMITATIONS.

¶11. The Plaintiffs argue that the notes entered into by Kidd, each in the amount of $375,000, met all of the statutory requirements for negotiable instruments pursuant to Mississippi Code Section 75-3-104 (Rev. 2002); thus, the complaint was timely filed within the six-year statute of limitations pursuant to Section 75-3-118(b).

¶12. The trial court dismissed the Plaintiffs' complaint on the basis that neither of the promissory notes, each in the amount of $375,000, was a negotiable instrument under Section 75-3-104 because neither of the notes contained the required "words of negotiability." As a result, the trial court found that the notes were not subject to the six-year statute of limitations applicable to negotiable instruments under Section 75-3-118(b). Instead, according to the trial court, the notes were subject to the three-year statute of limitations for breach-of-contract claims. Conversely, Kidd argues that the trial court correctly interpreted the provisions of Section 75-3-104.

¶13. Section 75-3-104(a) defines a negotiable instrument as follows:

> Except as provided in subsections (c) and (d), "negotiable instrument" means an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it:

7

(1) Is payable to bearer or to order at the time it is issued or first comes into possession of a holder;

(2) Is payable on demand or at a definite time; and

(3) Does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money, but the promise or order may contain (i) an undertaking or power to give, maintain, or protect collateral to secure payment, (ii) an authorization or power to the holder to confess judgment or realize on or dispose of collateral, or (iii) a waiver of the benefit of any law intended for the advantage or protection of an obligor.

Miss. Code Ann. § 75-3-104(a) (Rev. 2002).

¶14.    The statutory definition of "payable to order" is found in Section 75-3-109(b), which states:

A promise or order that is not payable to bearer is payable to order if it is payable (i) to the order of an identified person or (ii) to an identified person or order. A promise or order that is payable to order is payable to the identified person.

Miss. Code Ann. § 75-3-109(b) (Rev. 2002).

¶15.    What the Plaintiffs identify as the "Whitaker note" reads as follows: "On demand, for value received, I promise to pay to R.W. Whitaker . . . the sum of Three Hundred, Seventy-five Thousand Dollars ($375,000)." The written agreement identified as the "Fletcher note" contains identical language. The Plaintiffs argue that this meets the statutory definition of "payable to order" and urge this Court to interpret Section 75-3-109(b) as defining "payable to order" as follows: payable "to the order of an identified payee," payable to an identified payee, or payable "to order." In support of their argument, the Plaintiffs cite the canon of

8

statutory construction that statutes written in the disjunctive set forth separate and distinct alternatives. *See **In re Branan***, 419 So. 2d 145, 146 (Miss. 1982) ("The use of the disjunctive 'or' denotes a choice between alternatives.").

¶16.    However, interpreting Section 75-3-109(b)(ii) as defining "payable to order" as payable to an identified payee *or* payable to order is contrary to how the majority of jurisdictions interpret the Uniform Commercial Code's statutory requirements for negotiable instruments. In order to meet the requirements of a negotiable instrument:

> [A] paper or instrument generally must be payable to order or to bearer at the time it is issued or comes into the possession of a holder. This means that notes payable simply to a specific payee, and not to the order of the payee or to the payee or order, are not negotiable.

11 Am. Jur. 2d *Bills and Notes* § 37 (2009) (footnotes omitted). Thus, the words "payable to the order of" or payable "to [identified payee] or order" must appear within the instrument in order to qualify it as a negotiable instrument, and since the promissory notes in today's case do not contain this language, they cannot be deemed to be negotiable instruments.

¶17.    Arguing  that the agreements met the statutory definition of negotiable instruments, the Plaintiffs contend that the six-year statute of limitations for negotiable instruments under Section 75-3-118 applies in this case and that the statute of limitations would not have expired until July 1, 2008, six years after the Whitaker and Fletcher notes were signed. However, having already found no error on the part of the trial court in declining to find that either of the notes met the statutory requirements for negotiable instruments, we find no error on the part of the trial court in  applying the three-year statute of limitations pursuant to

9

Section 15-1-49. *See* Miss. Code Ann. § 15-1-49 (Rev. 2003). Accordingly, there was no error on the part of the trial court in dismissing the breach-of-promissory-notes claim as time-barred.

## II. WHETHER THE TRIAL COURT ERRED IN DISMISSING THE FRAUD AND BREACH-OF-CONTINUING-GUARANTY CLAIMS.

¶18. Negotiations between these parties began in 2001. The Plaintiffs' complaint states that in early 2002, based on the fraudulent inducement by Kidd, they each lent Kidd/Limeco $375,000. On or about February 19, 2002, Kidd allegedly induced Whitaker to borrow from The Peoples Bank & Trust Company in Tupelo $100,000 for the benefit of Kidd, who in turn misrepresented to the Plaintiffs that, to the extent he could not personally repay the loans, Limeco had sufficient assets to satisfy the loan agreements. According to the Plaintiffs, Kidd concealed the fact that Limeco did not have sufficient assets to repay the loans by showing them false documentation in the form of financial books depicting Limeco as a corporation with substantial assets. On April 19, 2002, the bank loan came due and was extended with the understanding that Kidd would execute a continuing guaranty in which Kidd guaranteed that any and all indebtedness of Whitaker to the Bank would be paid by Kidd/Limeco for an amount up to $100,000 – a continuing guaranty which both Kidd and Limeco subsequently failed to honor. On July 1, 2002, Kidd entered into a promissory note with both Plaintiffs, with each note memorializing the agreement between Kidd and the Plaintiffs to repay each of them $375,000 with an interest rate of seven percent per year.

10

¶19. The trial court found that "the Plaintiffs have failed to allege any affirmative acts on the part of the Defendants designed to conceal the Plaintiffs' causes of action. The facts alleged relate only to the original act of fraud by the Defendants." As to when the three-year statute of limitations commenced running for the fraud claim, the trial court opined:

> [T]he Plaintiffs' complaint fails to state precisely when Kidd and Limeco Corporation committed these acts. However, it is certain that the Plaintiffs had knowledge of their claim for fraud at the very latest on December 11, 2003, when they filed their original complaint. As the present suit was filed in September, 2007, the Plaintiffs' causes of action for fraud are clearly barred by the three-year statute of limitations.

Accordingly, the trial court granted Kidd's Motion to Dismiss based upon the Plaintiffs' failure to state a claim upon which relief could be granted pursuant to Mississippi Rule of Civil Procedure 12(b)(6).

¶20. "[F]raudulent concealment of a cause of action tolls its statute of limitations." *Channel v. Loyacono*, 954 So. 2d 415, 423 (Miss. 2007) (quoting *Robinson v. Cobb*, 763 So. 2d 883, 887 (Miss. 2000); *Myers v. Guardian Life Ins. Co. of America, Inc.*, 5 F. Supp. 2d 423, 431 (N.D. Miss. 1998)). The fraudulent concealment doctrine "applies to any cause of action." *Robinson*, 763 So. 2d at 887 (quoting *Myers*, 5 F. Supp. 2d at 431).

¶21. Mississippi Code Section 15-1-67 governs the tolling of statutes of limitations due to fraudulent concealment:

> If a person liable to any personal action shall fraudulently conceal the cause of action from the knowledge of the person entitled thereto, the cause of action shall be deemed to have first accrued at, and not before, the time at which such fraud shall be, or with reasonable diligence might have been, first known or discovered.

11

Miss. Code Ann. § 15-1-67 (Rev. 2003). The proper test is "whether a reasonable person similarly situated would have discovered potential claims." *Andrus*, 887 So. 2d at 180 (citing *Am. Bankers' Ins. Co. of Fla. v. Wells,* 819 So. 2d 1196, 1201 (Miss. 2001)).

¶22. In alleging fraudulent concealment of a claim, a plaintiff must show: "(1) some affirmative act or conduct was done and prevented discovery of a claim, and (2) due diligence was performed on their part to discover it." *Channel*, 954 So. 2d at 423 (quoting *Stephens v. Equitable Life Assurance Soc. of U.S.*, 850 So. 2d 78, 84 (Miss. 2003)). The affirmative act must be designed to prevent discovery of the claim. *Id.* (citing *Robinson v. Cobb*, 763 So. 2d 883, 887 (Miss. 2000). Both are questions of fact, not law, and should be left to a jury for determination. *Robinson,* 763 So. 2d at 888-89.

¶23. The Defendants argue that the trial court was correct in its ruling inasmuch as the Plaintiffs assert the same facts to support both the fraud claim and the fraudulent-concealment claim, namely that Kidd produced false books showing Limeco to be solvent. According to the Defendants, the Plaintiffs failed to assert any subsequent affirmative act of concealment. The Defendants cite *Andrus v. Ellis*, 887 So. 2d 175, 181 (Miss. 2004), for the premise that a plaintiff must prove "some subsequent affirmative act by the defendant which was designed to prevent and which did prevent discovery of the claim." *Id.* (citing *Stephens*, 850 So. 2d at 83-84).

¶24. The facts at hand, however, are easily distinguished from those found in *Andrus*, which involved various plaintiffs who entered into loan agreements with Commercial Credit

12

Corporation. *Andrus*, 887 So. 2d at 176-78. The plaintiffs in *Andrus* filed suit against eight individual defendants, all employees of Commercial Credit, claiming that the defendants fraudulently induced them to purchase credit-insurance policies in connection with their loans. *Id.* at 176. The plaintiffs claimed that they either were not aware that they had purchased credit insurance, or they were aware, but thought the insurance was required in order to take out the loan. *Id.* This Court rejected the plaintiffs' fraudulent-representation argument on the basis that the testimony reflected a general misunderstanding of the terms of their loans, not specific, affirmative acts of concealment. *Id.* at 181. Moreover, all plaintiffs were put on notice of the terms of the loans when they received copies of the loan documents. *Id.*

¶25. As to the first prong of fraudulent concealment, an affirmative act to prevent discovery of a claim, *see **Channel***, 954 So. 2d at 423, we find that the Plaintiffs have made a sufficient showing of affirmative acts by Kidd to conceal the Plaintiffs' fraud claim to warrant a jury determination. Kidd made fraudulent misrepresentations regarding Limeco's assets in the course of negotiations between the parties as early as 2001. These negotiations culminated in three separate loan agreements, wherein the Defendants received more than $850,000. Kidd presented the Plaintiffs with financial records depicting Limeco as a solvent corporation. According to the Plaintiffs, in February 2002, Kidd induced Whitaker to take out a loan in the amount of $100,000, again with the understanding that Kidd and Limeco had sufficient assets to repay this loan. In April 2002, Kidd executed a continuing guaranty

13

with the understanding that Kidd would be responsible for any and all indebtedness to the Bank up to $100,000. In July 2002, Kidd memorialized the two $375,000 loans with two written contracts (called "promissory notes" by the Plaintiffs), drafted and executed with the understanding that Kidd and Limeco had substantial assets to repay the loans.

¶26. Moreover, as to whether there were subsequent acts of concealment, the facts in this case are distinguishable from the case relied on by the trial court, **Dunn v. Dent**, 169 Miss. 574, 153 So. 798 (1934). **Dunn** involved a claim for alleged false representations made in a warranty deed as to the amount of land conveyed to the appellant. **Dunn**, 153 So. at 798. The suit was time-barred because it was not filed within the requisite six-year statute of limitations. **Id.** at 799. This Court rejected the appellant's fraudulent-concealment claim based on the fact that, once the real estate transaction was complete and the six-year statute of limitations period began running, the parties had no subsequent communication or dealings. The Court stated, "[A]fter the delivery of the deed, the appellant had no communication with the appellees, and it fails to show that they did anything that could be construed as a concealment of the falsity of the representation as to the amount of land conveyed, or a concealment of the cause of action." **Id.** Unlike **Dunn**, the Plaintiffs' complaint in today's case alleged subsequent dealings and communication between the parties, such that a jury determination as to whether the Plaintiffs used due diligence in discovering their fraud claim is necessary.

14

¶27. The trial court aptly stated the law that an act cannot be both an act of fraud in the inducement and an act of fraudulent concealment. Thus, showing false financial records could not serve to have both fraudulently induced the Plaintiffs and fraudulently concealed from the Plaintiffs the underlying fraud claim. Regardless of whether the Plaintiffs were fraudulently induced to lend the money by the false financial records, the parties had subsequent dealings after the early 2002 fraudulent inducement, namely, inducing Whitaker to lend Kidd an additional $100,000 and to enter into the continuing guaranty, and then entering into the written agreements (referred to by the Plaintiffs as promissory notes) in July 2002. These subsequent agreements and dealings were predicated on the fact that Kidd continued to incur debt with the understanding that, to the extent he could not repay the loans, Limeco would repay the debts that he incurred on Limeco's behalf.

¶28. As to the second prong, due diligence, the Plaintiffs deposed Kidd in March 2007, as part of the discovery in the original complaint for the breach-of-promissory-notes and breach-of-continuing-guaranty claims. During his deposition, Kidd admitted to fraudulently misrepresenting Limeco's assets. The Plaintiffs argue that the trial court erred in finding that the statute of limitations on the fraud claim began running in December 2003, when they filed their original complaint, because they did not learn of the fraud until March 2007, during the course of Kidd's deposition testimony. We find this argument compelling in that as of December 2003, the Plaintiffs had knowledge of the breach – the fact that Limeco had failed to repay the loans and had failed to honor the continuing guaranty. However, what

15

the Plaintiffs did not know until March 2007 was that Limeco had never possessed the assets to repay the debt incurred by Kidd, nor did Kidd have any intention to repay the loans. Thus, we remand for a jury determination as to whether the Plaintiffs used reasonable diligence.

¶29. Because we are considering the propriety of a trial judge's grant of a motion to dismiss, the allegations in the Plaintiffs' complaint must be viewed as true, and Kidd/Limeco's motion to dismiss should not have been granted by the trial court unless it appeared beyond doubt that the Plaintiffs would be unable to prove any set of facts that supported their claim. *See **Burleson**,* 968 So. 2d at 932. Based on our discussion of this issue thus far, we find the trial court erred in dismissing the fraud claim on the basis that the Plaintiffs did not state a claim upon which relief could be granted under Mississippi Rule of Civil Procedure 12(b)(6). In other words, from the record before us, we are not prepared to state that it appears beyond doubt that the Plaintiffs are unable to prove any set of facts in support of their claim that Kidd committed subsequent, affirmative acts to prevent the Plaintiffs from discovering they were fraudulently induced to enter into the loan agreements. Accordingly, we reverse and remand this issue to the trial court for proceedings consistent with this opinion.

¶30. The Plaintiffs also raise as part of this issue whether the trial court erred in dismissing the breach-of-continuing-guaranty claim. Because the Plaintiffs were aware of the breach of the continuing guaranty as early as 2002 and at the latest in December 2003, when they originally filed suit, the trial court did not commit error in dismissing this claim as being

16

time-barred by the three-year limitations period provided in Mississippi Code Section 15-1-49 (Rev. 2002).

### III    WHETHER THE TRIAL COURT ERRED IN RULING THAT LIMECO HAD NO CORPORATE LIABILITY.

¶31. The Plaintiffs argue that Kidd's fraudulent misrepresentations while acting as managing director of Limeco give them leeway to pierce the corporate veil and hold Kidd liable for the torts he committed when acting as managing director of Limeco. To this end, the Plaintiffs cite *Turner v. Wilson*, 620 So. 2d 545 (Miss. 1993), for the general premise that " when a corporate officer directly participates in or authorizes the commission of a tort, even on behalf of the corporation, he may be held personally liable." *Id.* at 548. Piercing the corporate veil is predicated on a showing of fraud. *Id.* at 548-49.

¶32. The trial court found that there were no viable claims against Limeco due to the statute of limitations having run as to all claims, including the fraud claim. As a result, because Limeco could not be held liable, there was no basis for piercing the corporate veil to hold Kidd personally liable.

¶33. Because this issue is conditioned upon a showing by the Plaintiffs that their fraud claim was fraudulently concealed from them until 2007, we decline to address this issue and remand this issue to the trial court for further proceedings in accordance with this opinion.

### CONCLUSION

¶34. In sum, the Plaintiffs' first assignment of error is without merit inasmuch as the trial court correctly interpreted the statutory requirements for negotiable instruments pursuant to

17

Mississippi Code Section 75-3-104 (Rev. 2002). As to the issue of whether the breach-of-continuing-guaranty claim was improperly dismissed, we find that it was properly dismissed as time-barred. As to the issue of whether the fraud claim was improperly dismissed, we reverse and remand this issue to the trial court, for the reasons stated, for the jury to consider whether the claim was fraudulently concealed from the Plaintiffs until discovered in March 2007. Also, the final issue must be remanded to the trial court, since piercing the corporate veil to hold Kidd personally liable would be contingent on the Plaintiffs proving their fraud claim. Therefore, the final judgment of dismissal entered against R. W. Whitaker and Monty Fletcher and in favor of Limeco Corporation and William Kidd is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

¶35. **AFFIRMED IN PART; REVERSED IN PART, AND REMANDED.**

**WALLER C.J., GRAVES, P.J., DICKINSON, RANDOLPH, LAMAR, KITCHENS, CHANDLER AND PIERCE, JJ., CONCUR.**