# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

November 7, 2022

Lyle W. Cayce
Clerk

No. 18-60590

Roger Stringer; Kimberly Hyder; Zachary Stringer,

*Plaintiffs—Appellants*,

*versus*

Remington Arms Company, L.L.C.; Sporting Goods
Properties, Incorporated; E.I. Du Pont De Nemours and
Company,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 2:18-CV-59

Before Wiener, Graves, and Oldham, *Circuit Judges*.
James E. Graves, Jr., *Circuit Judge*:

This is a products-liability action involving an allegedly defective trigger mechanism on a Remington rifle. The district court dismissed the suit with prejudice. We AFFIRM.

I.

In June 2011, fifteen-year-old Zachary Stringer shot his brother, eleven-year-old Justin Stringer, with a Remington Model 700 rifle equipped with an X-Mark Pro trigger. Zachary was arrested and charged with murder.

No. 18-60590

According to Plaintiffs, however, Zachary "consistently maintained that he never touched the trigger before the rifle fired." The jury convicted Zachary of manslaughter, and the Mississippi Supreme Court affirmed that conviction. *Stringer v. State*, 131 So. 3d 1182, 1184–87 (Miss. 2014).

In March 2018, Zachary and his parents (collectively, "Plaintiffs") sued Remington, the retailer that sold the rifle, and Remington's predecessors in interest (collectively, "Defendants") in Mississippi state court. Plaintiffs emphasized that Remington had in April 2014 recalled all Model 700 rifles with X-Mark Pro triggers because the rifles "can and will spontaneously fire without pulling the trigger." They brought state-law claims for products liability, failure to warn, negligence, and gross negligence.

The case was removed to federal court, and Defendants moved to dismiss under Rule 12(b)(6). In their response to that motion, Plaintiffs asked to file a federal-court complaint to allege additional facts related to the statute-of-limitations. But the district court granted Defendants' motion with prejudice, concluding that Plaintiffs' suit was barred by Mississippi's three-year statute of limitations. The court found, among other things, that Mississippi's fraudulent concealment statute could not toll the statute of limitations because—even assuming Defendants' acts prevented Plaintiffs from discovering their claims—Plaintiffs did not exercise due diligence. Plaintiffs appealed, challenging only the district court's ruling on fraudulent concealment.

## II.

To survive a motion to dismiss, a complaint "must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). But heightened pleading

requirements apply to claims involving fraud. Under Federal of Civil Procedure Rule 9(b), a party alleging fraud or mistake "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). State-law fraud claims—like the ones Plaintiffs advance here—are subject to this requirement. *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 550–51 (5th Cir. 2010).[1]

Here, the district court's subject-matter jurisdiction was based on diversity of citizenship. We must therefore apply "federal procedural and evidentiary rules, and the substantive laws of the forum state." *Huss v. Gayden*, 571 F.3d 442, 449–50 (5th Cir. 2009) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). Under the *Erie* doctrine, statutes of limitations are "substantive," so we apply "the statute of limitations that the forum state would apply." *Id.* at 450 (citing *Guar. Tr. Co. v. York*, 326 U.S. 99, 109–10 (1945)).

Mississippi has a general three-year statute of limitations. Miss. Code § 15-1-49(1). For "non-latent injuries" like the one alleged here, the cause of action accrues on the date of the injury. *See id.* § 15-1-49(1)-(2). But Mississippi allows for the tolling of a statute of limitations based on a defendant's fraudulent concealment. Miss. Code § 15-1-67. Fraudulent concealment has two elements: that "(1) some affirmative act or conduct was done and prevented discovery of a claim, and (2) due diligence was performed on [the plaintiff's] part to discover it." *Whitaker v. Limeco Corp.*, 32 So. 3d 429, 436 (Miss. 2010) (quoting *Channel v. Loyacono*, 954 So. 2d 415, 423 (Miss. 2007)) (internal quotation marks omitted).

---

[1] Indeed, Mississippi has a parallel rule requiring "the circumstances constituting fraud or mistake" to be "stated with particularity" in pleadings. Miss. R. Civ. P. 9(b).

### III.

The parties do not dispute that the statute of limitations governing Plaintiffs' claims would normally have expired on June 11, 2014—three years after the date of Justin Stringer's death. But Plaintiffs, who filed suit in March 2018, argue that the statute of limitations was tolled by Defendants' fraudulent concealment. The district court rejected that argument. We agree.

The district court focused its analysis on whether Plaintiffs had adequately pleaded their own due diligence. But we focus on another deficiency in Plaintiffs' complaint: Their failure to meet the pleading standards of Rule 9(b).[2]

As noted above, Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Here, of course, Plaintiffs are not pleading fraud—they are merely asserting fraudulent concealment as a defense to the statute of limitations. But our court has previously found that Rule 9(b) applies in fraudulent concealment cases. *See Summer v. Land & Leisure, Inc.*, 664 F.2d 965, 970–71 (5th Cir. Unit B 1981).

And Plaintiffs fail to meet Rule 9(b)'s requirements. In their complaint, they explain that they have found public resources that contradict Remington's public statements regarding the safety of the XMP trigger. They also allege that Remington had "actual and/or physical knowledge of manufacturing, and/or, design deficiencies in the XMP Fire Control years before the death of Justin Stringer" and that the company received customer complaints regarding trigger malfunctions as early as 2008. But Plaintiffs do not make the leap to fraudulent concealment. They say merely that

---

[2] We do not raise Rule 9(b) *sua sponte*. Remington raised the issue in its response to Plaintiffs' appeal. Plaintiffs did not respond.

Remington "ignored" notice of a safety related problem. Our court has previously disallowed the practice of basing claims of fraud on "speculation and conclusory allegations," even when the facts pleaded in a complaint are "peculiarly within the opposing party's knowledge." *See Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir.1994) (citation omitted). Here, Plaintiffs do not make even those conclusory claims. Their complaint fails to meet the pleading standards of Rule 9(b), and the district court was right to dismiss it.

"[D]ismissal for failure to comply with Rule 9(b) is almost always with leave to amend." *Summer*, 664 F.2d at 971 (citation omitted). Here, the district court denied Plaintiffs that chance. But Plaintiffs failed to challenge that decision on appeal. So we must and do hereby AFFIRM the district court's dismissal with prejudice.

No. 18-60590

WIENER, *Circuit Judge*, dissenting:

Despite my respect for my colleagues of the majority, I am compelled to dissent.

In 2011, Justin Stringer instantly died when a Remington Model 700 bolt-action rifle equipped with an X-Mark Pro trigger discharged while in the hands of his brother Zachary. Both were minors at the time. Despite Zachary's assertions that he "never touched the trigger before the rifle fired," he was arrested six days after the shooting, stood trial for murder, and was convicted of manslaughter for the shooting death of his brother. In April 2014, while Zachary was serving his sentence—and after the Mississippi Supreme Court affirmed his conviction—Remington recalled all Model 700 rifles with X-Mark Pro triggers. Remington's recall notice stated that those rifles could "cause injury or death" as the result of an "unintended discharge."

Four years after the recall, Zachary, along with his parents, Roger Stringer and Kimberly Hyder ("Plaintiffs"), sued Defendant-Appellee Remington Arms Company (and several related entities) in Mississippi state court. After the case was removed to federal court, it was dismissed with prejudice under Rule 12(b)(6), based on Mississippi's three-year statute of limitations.

Plaintiffs contend that Remington's fraudulent concealment tolled the statute of limitations for their claims. Under Mississippi law, a defendant's fraudulent concealment tolls a statute of limitations when (1) the defendant's affirmative act or conduct prevented discovery of a claim and (2) the plaintiff exercised due diligence to discover the claim, *i.e.*, acted as would

a reasonable person "similarly situated." Both elements are "questions of fact, not law."[1]

The panel majority concludes that the Plaintiffs' allegations are not sufficient to toll Mississippi's three-year statute of limitations based on Remington's fraudulent concealment because their complaint fails to comply with the requirements for pleading fraud under Federal Rule of Civil Procedure 9(b). The majority reasons that the complaint's allegations that Remington ignored notice of a safety-related problem do not amount to fraudulent concealment. *At the 12(b)(6) stage, however, a court must accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff.*[2] The majority opinion fails to comply with this directive, instead narrowly construing the allegations in the complaint—that Remington was aware of a defect in the X-Mark Pro trigger and concealed it from consumers—as failing to satisfy the requirement to plead fraud with particularity.

## I.

Under Mississippi law, fraudulent concealment has two elements: that "(1) some affirmative act or conduct was done and prevented discovery of a claim, and (2) due diligence was performed on [the plaintiff's] part to discover it."[3]

The panel majority's holding that Plaintiffs failed to comply with Rule 9(b)'s requirement to plead fraud with specificity goes to the affirmative-act prong of fraudulent concealment. That holding ignores the numerous

---

[1] *Whitaker v. Limeco Corp.*, 32 So. 3d 429, 436 (Miss. 2010) (quoting *Andrus v. Ellis*, 887 So. 2d 175, 180 (Miss. 2004)).

[2] *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011).

[3] *Whitaker*, 32 So. 3d at 436 (quoting *Channel v. Loyacono*, 954 So. 2d 415, 423 (Miss. 2007)).

allegations in the complaint regarding Remington's knowledge of a safety issue and the company's fraud by omission, *i.e.*, its failure to disclose the safety issue to the public.

To support Plaintiffs' contention that Remington knew about the defect and took actions to conceal it, the complaint alleges that Plaintiffs "have learned Remington was receiving customer complaints from the field involving reported malfunctions with the XMP as early as 2008." Plaintiffs assert that Remington's knowledge of a safety issue "contradicts [its] preposterous public statements, regarding the safe utility" of the X-Mark Pro Trigger.

Plaintiffs also cite a 2010 CNBC documentary titled *Remington Under Fire* and a 2015 update to that story titled *The Reckoning–Remington Under Fire*. In its official response to the 2010 CNBC story, Remington stated that "[t]he Model 700, including its trigger mechanism, has been free of any defect since it was first produced and, despite any careless reporting to the contrary, the gun's use by millions of Americans has proven it to be a safe, trusted and reliable rifle."

Plaintiffs' complaint includes two exhibits: (1) a protective order concerning a redesign of the X-Mark Pro trigger and (2) the 2015 deposition testimony of a Remington employee who stated that, for the X-Mark Pro trigger, "the application of excess Loctite to the trigger assembly was not [] intended with the design." That employee also acknowledged that Remington was aware of such a problem based on customer videos from 2010 and 2014 showing defects with the X-Mark Pro trigger. He stated that those videos prompted an investigation and that Remington was eventually able to replicate the defect, learning that "there was an issue" with the rifles. Citing this testimony, Plaintiffs alleged that "Remington had previously received notice of a safety related problem [in the X-Mark Pro trigger], which the company apparently ignored in 2010."

No. 18-60590

The complaint's allegations indicate that Remington knew about problems with the X-Mark Pro trigger before the recall but did not disclose its knowledge of those problems during the limitations period. And, contrary to Defendants' assertion that the complaint allegations relate only to the "Walker" trigger, the deposition testimony cited in the complaint expressly references the "XMP" trigger at issue here.

The panel majority fails to acknowledge that "the pleading requirements of Rule 9(b) may be relaxed in certain circumstances—when, for instance, the facts relating to the fraud are peculiarly within the perpetrator's knowledge."[4] Fraudulent concealment, by its very nature, is one such circumstance.

Plaintiffs have alleged, with as much particularity as the facts within their knowledge permit, that Remington was aware of a defect and failed to disclose it to consumers for years. Accepting the complaint allegations as true and viewing them in the light most favorable to Plaintiffs, they have sufficiently pleaded the "affirmative act" element of fraudulent concealment to survive Rule 9(b) dismissal.[5]

## II.

Even though Plaintiffs sufficiently alleged that Remington engaged in an affirmative act of concealment regarding the trigger defect, they also had

---

[4] *U.S. ex rel. Doe v. Dow Chem. Co.*, 343 F.3d 325, 330 (5th Cir. 2003) (internal quotation marks and citation omitted); *see also U.S. ex rel. Russell v. Epic Healthcare Mgmt. Grp.*, 193 F.3d 304, 308 (5th Cir. 1999), *abrogated on other grounds by U.S. ex rel. Eisenstein v. City of New York, New York*, 556 U.S. 928 (2009).

[5] The district court also indicated that Plaintiffs likely satisfied the affirmative act prong of fraudulent concealment. Despite dismissing Plaintiffs' claims on the due diligence prong, the district court observed that "it is not facially obvious that the Plaintiffs failed to adequately demonstrate that Defendants' affirmative acts or conduct prevented discovery of the claim."

No. 18-60590

to allege that they exercised due diligence to discover the facts supporting their claim. The panel majority concludes that Plaintiffs failed to plead fraud (*i.e.,* an affirmative act of concealment) with specificity, but my colleagues did not analyze whether the district court erred in concluding that Plaintiffs' complaint reveals that they did not exercise due diligence. The district court *did* err in that conclusion, however, because it failed to consider whether a reasonable person similarly situated to Plaintiffs would have discovered the claims they now advance.

The Mississippi Supreme Court has ruled that the test for due diligence is "whether a reasonable person similarly situated would have discovered potential claims."[6] The district court addressed the "due diligence" element as follows:

> A rifle spontaneously firing and killing someone absent manipulation by the user certainly would put a reasonable person on notice to investigate further. Plaintiffs' actions following the incident suggest more of a willful ignorance than a thought to investigate an abnormal event.

That court concluded that "Plaintiffs in this case may have not known the precise reason that the subject rifle fired without being manipulated, but a reasonable person knows that guns typically do not discharge on their own." Although Plaintiffs might not have known why the rifle fired, "they unequivocally knew that the subject rifle should not have discharged."[7]

---

[6] *Whitaker*, 32 So. 3d at 436 (quoting *Andrus*, 887 So. 2d at 180).

[7] The district court's opinion dismissing the case did not discuss or cite the Mississippi Supreme Court's opinion.

No. 18-60590

The district court's analysis fails to account for the "similarly situated" facet of Mississippi's test for due diligence.[8] The events that followed Justin Stringer's death complicate this analysis. The district court reasoned that because *anyone* should know that rifles are not supposed to fire on their own, Plaintiffs were not diligent when they failed to (1) investigate their claims or (2) contact Remington, after Justin was killed.

## A. Roger Stringer and Kimberly Hyder's Diligence

In evaluating whether the victim's parents, Roger Stringer and Kimberly Hyder,[9] exercised due diligence, *i.e.*, whether each acted as would a "reasonable person similarly situated,"[10] the district court should have considered that there had been a criminal trial about whether their son, Zachary, pulled the trigger.

At that trial, the state introduced seemingly conclusive evidence that the shooting was not accidental, *i.e.*, that someone must have pulled the rifle's trigger. A forensic expert from the Mississippi Crime Lab conducted tests on the rifle and its trigger. She testified that (1) the rifle never produced any accidental discharge and was "in good working order," and (2) the trigger required a pull of more than five pounds to release.[11]

---

[8] *Whitaker*, 32 So. 3d at 436 (quoting *Andrus*, 887 So. 2d at 180). Notably, Defendants do not mention the words "similarly situated" in their brief.

[9] Roger was the main actor in discovering the rifles' recall; the briefs do not discuss Kimberly Hyder's (Zachary's mother) actions. This section therefore focuses primarily on Roger's actions, which can be attributed to Hyder based on the allegation that Roger's March 14, 2015 internet search "was the first time any of the Plaintiffs had learned of any potential defects in the Remington 700 XMP rifle."

[10] *Whitaker*, 32 So. 3d at 436.

[11] State Court Record on Appeal at 248-250, *Stringer v. State*, 2013-KA-00586-SCT (Miss. July 18, 2013). This court may take judicial notice of the Mississippi state court record of Zachary Stringer's criminal case. *See Biliouris as next friend of Biliouris v. Patman*,

No. 18-60590

In addition to that expert testimony, Roger Stringer testified against Zachary. He stated that the rifle "had a 'hard trigger'" that took considerable force to fire.[12] Roger also stated that (1) he had taught Zachary about gun safety and (2) Zachary was one of the safest people he knew with a firearm.[13] This testimony about gun safety was presumably offered to undermine Zachary's insistence that the rifle fired without its trigger being pulled.

These facts indicate that, during the trial and for some time afterward, Roger did not believe Zachary's account that the rifle's trigger had not been pulled. The overwhelming evidence presented at trial (including the forensic expert's testimony and Remington's peerless reputation of manufacturing safe guns with safe trigger mechanisms) and the jury's verdict, served to confirm Roger's belief that his older son had in fact pulled the trigger. A person "similarly situated" to Roger—who had participated in a jury trial that resulted in a manslaughter conviction and who had seen a plethora of evidence that the defendant must have pulled the gun's trigger—might reasonably have not been on the lookout for information about defective Remington triggers.

Moreover, the instant complaint alleges that, after Roger learned of the recall, he hired an investigator to review the record in Zachary's criminal trial and to determine if any possible connection existed between a deficiency

---

751 F. App'x 603, 604 (5th Cir. 2019) (per curiam) ("Taking judicial notice of directly relevant public records is proper on review of a Rule 12(b)(6) motion. 'A court may take judicial notice of the record in prior related proceedings.'") (quoting *In re Missionary Baptist Found., Inc.*, 712 F.2d 206, 211 (5th Cir. 1983)); *Wildman v. Medtronic, Inc.*, 874 F.3d 862, 866 (5th Cir. 2017) (concluding that the district court, in ruling on a motion to dismiss under Rule 12(b)(6), could take judicial notice of matters of public record).

[12] State Court Record on Appeal at 341, *Stringer v. State*, 2013-KA-00586-SCT (Miss. July 18, 2013).

[13] *Id.* at 347.

in a Model 700 rifle fitted with the XMP trigger mechanism and Justin's death. This shows that, soon after Roger learned of facts that would excite inquiry, he took appropriate investigatory actions.

Viewing the facts in the light most favorable to Plaintiffs, as a court must do at the Rule 12(b)(6) stage, Roger has alleged enough facts to satisfy the diligent-inquiry requirement to survive a Rule 12(b)(6) motion to dismiss.

## B. Zachary Stringer's Diligence

The district court improperly conflated Zachary Stringer's claims with those of his parents when it summarily concluded that none of the Plaintiffs exercised due diligence. The diligence inquiry must consider separately whether Zachary acted as a reasonable person "similarly situated." As that inquiry pertains to Zachary, "similarly situated" means an incarcerated minor whose parents, an expert witness, and a jury all believed that he pulled the rifle's trigger.

Several facts set out in the complaint support the proposition that Zachary, an incarcerated minor with parental antipathy, was legally diligent in filing this case. First, soon after he was released from jail, he filed a post-conviction motion with the Mississippi Supreme Court. This shows that, after he learned of Remington's recall and the possible connection to his conviction, he investigated and took action.

Second, depending on how Remington's April 2014 notice was distributed to the public—an issue on which the current record is silent[14]—Zachary, an incarcerated minor, would not likely have had immediate access to that notice, if he had any access at all. While Zachary was incarcerated, he

---

[14] *But see* Oral Argument Tr. at 11:14–12:05, *available at* http://www.ca5.uscourts.gov/OralArgRecordings/18/18-60590_8-7-2019.MP3 (indicating that the recall notice was distributed only via a post on Remington's website).

No. 18-60590

could not possibly have seen notices posted on billboards, displayed in sporting goods stores, or sent via direct mail to gun owners (of which he was not one). He also would likely have had limited access to news media, including hunting magazines.

Third, during the limitations period, Zachary likely had limited access to information in general. The record is also silent as to whether Zachary was able to access the Internet while he was serving his sentence.

Finally, Zachary was a minor during the entire limitations period. He was fifteen years old when he was arrested in 2011. He remained incarcerated throughout the limitations period, until his release in October 2016 at age twenty. Mississippi law, through its "minor savings clause," goes so far as to toll any applicable statutes of limitations until a minor turns twenty-one.[15] Under that provision, Zachary's claim—filed within three years after he turned twenty-one—was timely. This argument was not properly before the panel on appeal, however, because Plaintiffs' counsel raised it for the first time at oral argument before this court.[16]

Viewing the complaint allegations in the light most favorable to Zachary, he has alleged enough facts to satisfy the diligent-inquiry requirement at the Rule 12(b)(6) stage.[17]

---

[15] Miss. Code § 15-1-59 tolls the running of a statute of limitations until a minor claimant turns twenty-one. The Mississippi Supreme Court has held that the minor savings statute applies in wrongful-death actions. *Pioneer Cmty. Hosp. of Newton v. Roberts*, 214 So. 3d 259, 263–65 (Miss. 2017).

[16] *See Roebuck v. Dothan Sec., Inc.*, 515 F. App'x 275, 278 (5th Cir. 2013).

[17] *See Robinson*, 763 So. 2d at 889 ("There was enough conflicting evidence before the circuit court regarding the due diligence issue to deny the motion for summary judgment.").

14

No. 18-60590

## C.  Matters of Public Record

On appeal, Defendants rely on *Spann v. Diaz*, 987 So. 2d 443, 449 (Miss. 2008), and *Carder v. BASF Corp.*, 919 So. 2d 258, 261 (Miss. Ct. App. 2005), for the proposition that there can be no fraudulent concealment when the facts supporting a cause of action are matters of public record. Although that proposition weighs against a conclusion that Plaintiffs were diligent, given that Remington issued a public recall of the subject rifles in 2014, those cases (1) do not state that a matter of public record *always* defeats a fraudulent concealment claim and (2) are distinguishable from the facts here.

In *Spann*, the Mississippi Supreme Court held that a plaintiff who brought a legal-malpractice action against her former lawyer could not establish the elements of fraudulent concealment.[18] The *Spann* court explained that the plaintiff was on notice of her legal-malpractice claim, or should have been, when the Mississippi Supreme Court issued an opinion that denied her underlying claim and specifically described her lawyer's mistakes.[19] The *Spann* court concluded that the plaintiff's claim was time-barred because its earlier "opinion and denial of a motion for rehearing are public record and *[the plaintiff] had all the information necessary to pursue her claim* without being directly told that [her lawyer] was negligent."[20]

Unlike this case, *Spann* was decided on summary judgment. And unlike the plaintiff in *Spann*—who was also the plaintiff in the case for which the Mississippi Supreme Court issued the opinion that started the running of that plaintiff's statute of limitations—Plaintiffs here were never notified of Remington's April 2014 recall in a similar manner as a party to a lawsuit

---

[18] *Spann*, 987 So. 2d at 448–50.

[19] *Id.* at 449.

[20] *Id.* at 450 (emphasis added).

15

would be notified of a court opinion. Moreover, the *Spann* court qualified its "matter of public record" holding by adding that the plaintiff there in fact "had all the information necessary to pursue her claim" when the earlier opinion was issued.[21]

In *Carder*, the Court of Appeals of Mississippi held that the plaintiffs, who asserted a claim based on an alleged price-fixing scheme, could not satisfy the elements of fraudulent concealment because a news article describing the defendant's conduct was published in *The Wall Street Journal* many years earlier.[22] The court stated that "[w]hen the information is placed in the public domain, the doctrine of fraudulent concealment ceases to be applicable."[23]

After that pronouncement, however, the court limited its reasoning to the facts of the case: "This opinion is not intended to suggest that information published in a newspaper located anywhere automatically is sufficient to commence the running of the statute of limitation on a latent injury, but is limited solely to the facts of this case."[24]

That express limitation, as well as the fact that the Mississippi Supreme Court has never cited *Carder*—a decision from an intermediate appellate court—severely limits *Carder*'s persuasive value in our *Erie* analysis. Moreover, *Carder* concerned the "latent injury" discovery rule, which is not at issue here. And, unlike price-fixing allegations in *Carder*, the

---

[21] *Id.*

[22] *Carder*, 919 So. 2d at 260, 262.

[23] *Id.* at 262.

[24] *Id.*

instant recall notice was not published in a newspaper, and the record is silent as to how that notice was distributed to the public.

In sum, Remington's April 2014 recall notice is not dispositive of the diligence inquiry.

## III.

The majority opinion ignores the complaint's allegations that Remington was aware of a defect in the X-Mark Pro trigger yet concealed it from consumers. The majority opinion also fails to apply the more relaxed requirement to plead fraud under Rule 9(b) applicable when the facts regarding fraud are within the knowledge of the perpetrator.

The district court's judgment should be reversed. Plaintiffs adequately pleaded that (1) Remington committed an affirmative act of concealment (*i.e.,* fraud), and (2) they exercised due diligence, as would a reasonable person similarly situated, to discover their claims.

For the foregoing reasons, I respectfully dissent.